[**317**] JOHN E. LINN vs. THE STATE OF TEXAS — Appeal from Travis County.

The true construction of that provision of the 11th section of the act of 1841, "supplementary to an act to detect fraudulent land certificates," etc., requiring the claimant "to go through all the formalities prescribed by this act," renders it necessary that he should make the same proofs as are required by the land law of 1837, so far as the latter were applicable to his case.

Residence in the country from the inception of a claim for a headright to the application for a certificate, is indispensable to the establishment of the claim, and is as applicable to a claim arising under the 29th section of the land law of 1837 as to a claim under the 12th section.

To establish a headright claim in the district court, suit must, as a general rule, be brought in the county in which the party resided at the passage of the land law in 1837.

This was a suit brought under the 11th section of the act of 1841, "supplementary to an act to detect fraudulent land cirtificates," etc., to establish the headright claim of petitioner to one-third of a league of land. There was a verdict and judgment in favor of the state, from which the plaintiff appealed.

On the trial of this cause the court instructed the jury as follows:

1st. "That unless the plaintiff had received an honorable discharge, or if he had received no discharge at all, he was not entitled to recover.

2d. "That it was necessary for the plaintiff to prove that he resided in the county in which he brought his suit, at the time of the passage of the land law; to which the plaintiff excepted," etc.

The following is substantially a statement of the facts as presented by the record, viz.: The plaintiff proved by two witnesses that he landed at Copano in Texas, about the 9th of March, 1836, on his way to join the army under Colonel Fannin; that he belonged to the first legion of cavalry [**318**] commanded by Maj. Wm. P. Miller, and was regularly entered upon the muster roll of said legion and performed duty as a soldier belonging to the same; that about the 17th of March, 1836, before arriving at Colonel Fannin's headquarters, he, together with the balance of said legion, were taken prisoners by Gen. Urrea, commanding the Mexican forces, and marched as prisoners to Goliad, and there kept for six or seven weeks, when he made his escape and arrived at the headquarters of the Texian army under Gen. Rusk. That the muster roll of the legion was destroyed at the time of their capture; that he took the oath of allegiance on his arrival at Copano at the time before mentioned; that he was residing in Travis county when this suit was commenced, but it did not appear he had any permanent place of residence until a short time previous to the commencement of this suit, nor did the witnesses know where he resided after leaving the army in 1836, until he came to Travis county as aforesaid. It was further in evidence that the plaintiff received the following discharge, to wit:

"*Hon. Secretary of War* — Sir: This is to certify that the bearer, John E. Linn, was enlisted by me in Nashville, Tennessee, in January, 1836, to serve two years or during the war, as a private in the first legion of the regular Texas cavalry, and was made 1st sergeant sometime in February following, and landed in Texas, at Copano, about the 18th of March follow-

ing. He has not received any pay in money or bounty land, so far as I know, up to this time, and I also certify that I have not seen said Linn since our captivity at Copano, so as to give him his discharge until this time.

"July 12, 1847. (Signed)

"WILLIAM P. WILLER,

"Major 1st Legion of Regular Texas Cavalry."

The foregoing certificate was duly sworn to and authenticated. It did not appear in evidence that the legion of [**319**] Maj. Miller was ever regularly mustered into the service of Texas.

*Fisk*, for appellant.

*Harris*, Attorney General, for appellee.

Mr. Chief Justice HEMPHILL delivered the opinion of the court.

This was an application for one-third of a league of land, sued out under the 11th section of the act of 1841, supplementary to an act to detect fraudulent land certificates, p. 173. This section declares that "all individuals who are entitled to headright certificates of the first class, and who have not yet received them from any of the boards heretofore in existence, are hereby authorized to file their petition, and, upon their *going through all the formalities prescribed by this act*, obtaining a verdict of the jury in their favor," etc., etc.

A preliminary question is raised on this and other claims before the court as to the true construction of the provision that the claimant must go "through all the formalities prescribed by this act," for the purpose of establishing his claim. It must be recollected that for more than one year before the passage of this law there was no tribunal authorized to investigate claims for headright certificates of the first class. The law abolishing the boards of land commissioners and investing county courts with their powers, expired by its own limitation on the second Monday in January, eighteen hundred and forty, and, consequently, all those portions of the several acts, in relation to the establishment of a general land office, which prescribed the powers of these defunct tribunals, their modes of procedure, the number of witnesses and the facts which

must be proven to establish such claims, ceased to have any force or operation, and could only be revived by subsequent legislation in express terms, or by necessary implication. The county court was never afterwards reinvested with the authority of determining upon [**320**] claims for certificates of the first class. But by the 11th section of the act of 1841, which has been quoted in part, individuals entitled to such certificates were permitted to sue before the district courts without any positive instructions or regulations, other than that they should comply with the formalities prescribed by the act.

This was the only condition imposed, on compliance with which the claimant was entitled to a verdict, and it is one which is apparently uncertain, from the fact that the formalities referred to are prescribed for the re-establishment of certificates not recommended for patent and not for the grant of an original certificate. It will be seen, however, on a slight examination, that the difference in the character of investigation between the two classes of cases is but nominal.

They are both, in fact, original investigations. The owner of a rejected certificate is compelled to prove his claim entirely *de novo*, as if it were of the first impression never before established or rejected. The first certificate is in no shape recognized, except that it must be proven to have been obtained and not recommended, but the certificate is no evidence whatever of the genuineness of the claim; and the proof of the facts of its existence and rejection neither prejudices nor benefits the petitioner. The only effect of such proof is to prevent a party, whose certificate had been recommended, from suing for and obtaining another certificate on the same claim. Nothing is to be assumed as proven in the attempt to re-establish a certificate. The two classes of cases stand, then, precisely on the same footing; neither has an advantage over the other.

There is but one condition presented in a suit for the re-establishment of a certificate, inapplicable to the investigation of an original claim, and that is, the proof of the grant and want of recommendation of the former certificate. This would be an impossible condition when the application for a certificate is primary and has not previously been obtained and rejected.

[321] But impossible or insensible provisions in a deed or statute do not vitiate the whole. They will be rejected and the other portions will remain in full vigor and effect.

On rational principles of construction the claimant, being required to comply with all the formalities prescribed by the act, should be held to conform to all those required for the re-establishment of a certificate, not inapplicable to an original application.

We have seen that all but one are predicated on the basis that the application is a primary one; or, that all the facts requisite for the grant of the first certificate must be reproven before the grant of the second.

Neither class of claimants had any authority to sue at the passage of the act, and as the legislature required the holder of a rejected certificate to comply, for its re-establishment, with certain formalities, all predicated on the basis of re-proof, *de novo*, of the genuineness of the claim, it was not unreasonable that the applicant for an original certificate should comply with the same requisites; not being, in any degree, more difficult or onerous upon this than the other class. There is no foundation in reason or justice for a distinction between two claimants, one of them attempting to re-establish his claim by the re-proof of all the facts, and the other to establish his by proof of the facts for the first time; nor are we of opinion that the law intended any such distinction to be made.

The question then arises as to the facts which must be established before the grant of the certificate; and these are declared, by the 9th section of the act, to be such as are to be proven by the land law of 1837.

The petitioner claims under the first part of the 29th section of this law, and contends that he is required to prove the facts only of his arrival in the country between the 2d of March and the 1st of August, 1836, his honorable discharge, and having taken the oath prescribed by the constitution.

This construction, if admitted, would place the claimant [322] on a much more favorable footing than colonists who had lived in the country for years, and performed military services from the commencement of the revolution; or than

volunteers who had arrived in the country before the declaration of independence. These, by law, were required to prove their continued residence in the country up to the time of application for the certificate.

The next, or 30th section, shows that emigrant officers and soldiers will be entitled to more or less lands as a headright, as their families may or may not have emigrated with them to the country; or may or not do so in a prescribed period; and the next, or 31st section, declares that claimants under the 29th section shall make the same proof as is required of other claimants.

This is to be understood and applied, but with such modifications as will adapt the rule to the facts, which are the essential ingredients of the claim. Proof could not be required, for instance, that the claimant was here at the declaration of independence, as the fact of his arrival after that date authorizes the claim to be prosecuted under the 29th section. But residence in the country, from the inception of a claim for a headright to the application for the certificate, is indispensable to the establishment of a claim, and is as applicable to a claim which arises under the 29th section as under the 12th section of the act. If the volunteer had arrived before the declaration of independence, he would, before obtaining a certificate for his headright, have been compelled to prove his continued residence in the country; and certainly he who arrives after the declaration is not entitled to more indulgence.

The record shows that the witnesses had lost sight of the petitioner from 1836 to 1847, a period of eleven years. The fact of his having no place of permanent residence would have been immaterial, provided he had remained in Texas. This is not only not proven, but doubt is thrown by the evidence upon the fact.

[323] We have no doubt of the correctness of the charge that suit must be brought in the county in which the party resided at the passage of the land law; though this condition might be excused in cases where the volunteer, after his discharge, left the country and was by uncontrollable circumstances detained abroad until after the passage of the land

law. Neither this nor other fact of a similar character was attempted to be proved.

There being no error in the judgment, it is ordered that the same be affirmed.