STUART v. MEYER. (No. 8549.)

(Court of Civil Appeals of Texas. Ft. Worth. March 24, 1917. Rehearing Denied April 28, 1917. On Motion to Certify, May 22, 1917.)

1. TRUSTS ☞371(8)—RECOVERY OF STOCK—VARIANCE—TRIAL AMENDMENT.

In an action to recover stock alleged to have been obtained from plaintiff by defendant for voting purposes, although the original petition alleged that the stock was delivered at defendant's solicitation, where a trial amendment stated that an actual transfer of the stock was made to defendant's brother for the purpose of effecting the consummation and adjustment of the agreement which plaintiff and defendant had made, defendant was sufficiently appraised of the nature and character of the proof involved, so that proof that the stock was actually delivered to the defendant's brother to be delivered to a corporation was not a variance under the rule that allegation of misrepresentations by the principal will not be sustained by proof of such representations made by the agent.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 598.]

2. PLEADING ☞236(3) — ALLOWANCE OF AMENDMENTS—DISCRETION OF COURT.

Although District and County Court Rule 12 (142 S. W. xviii) provides for amendments generally as contradistinguished from supplemental petitions, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1824, requires amendments to be made before the parties announce ready for trial, in the absence of statutory authority, the practice in allowing trial amendments after announcement of ready under leave and within the sound discretion of the court is well established.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 601.]

3. EVIDENCE ☞443(1) — PAROL EVIDENCE VARYING WRITTEN AGREEMENT—COLLATERAL UNDERTAKING.

The rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of written instruments has no application to collateral undertakings or cases in which the written instrument was executed in part performance of an entire oral agreement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2048.]

4. TRUSTS ☞372(3) — EVIDENCE — SUFFICIENCY.

In an action to recover corporate stock transferred pursuant to a written agreement, evidence held to sustain a finding that there had been an oral agreement between the parties in the

carrying out of which occurred the transfer of the stock to the defendant by the plaintiff.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 602, 603.]

5. TRUSTS ☞372(3)—ENFORCEMENT — EVIDENCE—SUFFICIENCY.

Evidence held to warrant a finding that the first conversation which the plaintiff had with the defendant relative to the transfer of the stock was shortly before the time when defendant's brother secured the stock from the plaintiff.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 602, 603.]

6. LIMITATION OF ACTIONS ☞103(2)—ACCRUAL OF CAUSE OF ACTION—ACTION BY TRUSTEE.

Where written agreement was executed by plaintiff to defendant in exchange for defendant's stock in pursuance of a larger oral agreement, the defendant bore to the plaintiff a trust relation with reference to the holding of plaintiff's stock, and limitation did not begin to run in favor of the trustee until a repudiation by him of the trust relationship and until the cestui que trust had, in the exercise of due diligence, or by constructive notice, discovered such repudiation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 507.]

7. TRUSTS ☞110—EVIDENCE—SUFFICIENCY.

Evidence held to justify a finding that up to within two years prior to the filing of the suit, defendant had admitted his trust relationship, as to plaintiff's stock conveyed to him, and had promised an early return thereof.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 160.]

On Motion to Certify.

8. COURTS ☞247(7)—CERTIFYING TO SUPREME COURT CASES INVOLVING PREVIOUS DECISIONS.

Under Vernon's Sayles' Ann. Civ. St. 1914 art. 1623, authorizing certification of questions to Supreme Court in case of conflict with previous decisions of other Courts of Civil Appeals, a conflict with a decision of the Supreme Court is not authority for certification to the Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 752.]

9. COURTS ☞247(7)—CERTIFYING TO SUPREME COURT CASES INVOLVING PREVIOUS DECISIONS.

The holding that under the parol agreement between the plaintiff and defendant that defendant should return stock conveyed to him by plaintiff after he had used it for voting purposes, the defendant bore a trust relationship to plaintiff with reference to such stock held not in conflict with decisions of other Courts of Civil Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 752.]

10. COURTS ☞247(7)—CERTIFYING TO SUPREME COURT CASES INVOLVING PREVIOUS DECISIONS.

The holding that the plaintiff was not precluded from establishing a larger parol contract of which the written transfer of his stock to the defendant was but a part held not in conflict with decisions of other Courts of Civil Appeals

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 752.]

Appeal from District Court, Montague County; C. F. Spencer, Judge.

Suit by Robert Meyer against R. T. Stuart.

Judgment for plaintiff, and defendant appeals. Affirmed.

H. A. Turner, of Ft. Worth, for appellant. W. S. Jameson and Paul Donald, both of Montague, and J. A. Templeton, of Ft. Worth, for appellee.

BUCK, J. On April 25, 1915, Robert Meyer filed in the district court of Montague county a suit against R. T. Stuart, in which he alleged that, on or about the 25th day of April, 1912, he was the owner and holder of 50 shares of stock in the American Home Life Insurance Company, for brevity hereinafter called Life Insurance Company, of the par value of $20 per share; that said Life Insurance Company was a good and solvent company paying dividends on its stock; that on said date the defendant, with a fraudulent intent to cheat and defraud plaintiff out of the aforesaid stock, came to the town of Bowie, where plaintiff resided, and represented to plaintiff that there was a combination of stockholders in said Life Insurance Company, seeking to control said company to its detriment, and that for his own benefit and the benefit of said company it was necessary that he, the said Stuart, should be elected president and manager of said company at the coming meeting of the stockholders, and, learning that plaintiff would be unable to attend said meeting, he solicited plaintiff to transfer said stock to him, to be used by the defendant in voting for the purpose of assisting and "officering" the company with the best and most efficient man, promising that so soon as he had used said stock for the purposes aforesaid he would return the same unimpaired to plaintiff; that defendant further represented to plaintiff that he owned 50 shares of common stock and 50 shares of preferred stock, each share of the par value of $10, in the Bankers' Guaranty Company, hereinafter called Guaranty Company, a private corporation, and that said Guaranty Company was a good and solvent company, and its stock worth par value, and that said stock would be ample security to indemnify plaintiff against any loss during the time he, the defendant, should retain the possession of plaintiff's stock in the Life Insurance Company aforesaid; that, relying on the representations of defendant, plaintiff delivered to the defendant the said shares of stock in the said Life Insurance Company, with the mutual understanding that defendant would send to plaintiff the amount and kind of stock hereinbefore described in the Guaranty Company, to be held as security only to insure the faithful return to plaintiff of said stock in the Life Insurance Company. Within a few days thereafter, in compliance with defendant's said promise to plaintiff, defendant did deliver to plaintiff 50 shares of common stock and 50 shares of preferred stock in said Guaranty Company, each of the par value of $10. It was further alleged that the

stock in the Guaranty Company was wholly worthless and said company was insolvent, and that defendant well knew at the time he made said representations, and at the time of the transactions hereinabove mentioned, such to be the case.

It was further alleged that defendant had failed and refused to re-exchange the Life Insurance Company stock for the Guaranty Company stock, and that he had sold and transferred the stock in the former company to other parties; that plaintiff had never in any way mortgaged or incumbered the Guaranty Company stock held by him as security, but had held the same for the purpose of re-exchange, as aforesaid, and he tendered said Guaranty Company stock into court.

Defendant, Stuart, after general demurrer and special exceptions and general denial, answered that the true facts were that on or about February 16, 1912, plaintiff contracted in writing with the Guaranty Company, acting through its agent, O. E. Stuart, to purchase 100 shares of Guaranty Company stock heretofore described, and agreed to pay and exchange therefor his 50 shares of Life Insurance Company stock, and that there were made no conditions, representations, or agreements other than those contained in the written contract of purchase and exchange. Defendant further pleaded the statute of two years' limitation, and attached to his petition as an exhibit a memorandum in writing signed by Robert Meyer and witnessed by O. E. Stuart, reciting that said Meyer had purchased the 100 shares of stock in the Guaranty Company, and had agreed to pay in exchange therefor the 50 shares in the Life Insurance Company, and that "No conditions, representations or agreements other than those printed herein shall be binding on the Bankers' Guaranty Company or any of its representatives."

Plaintiff, by trial amendment, denied severally the allegations in defendant's answer, and specially pleaded that if he ever signed the paper set forth as an exhibit to defendant's answer, he did so at the request of O. E. Stuart, who was then acting for the defendant, R. T. Stuart, and so represented himself, and that said instrument was executed and said stock in the Life Insurance Company was exchanged for the stock in the Guaranty Company in consummation and adjustment of the agreement theretofore made between plaintiff and defendant, and that plaintiff signed such papers as the said O. E. Stuart represented to him were necessary in order to effect the exchange of stocks, that subsequent to said exchange, plaintiff met defendant and complained to him about the status of said stock, and told him he considered said Guaranty Company stock greatly depreciated in value and insufficient security for the Life Insurance Company stock which plaintiff had loaned and assigned to defend-

ant, and that he (plaintiff) wished better se-curity for his Life Insurance Company stock, or the return of his said stock, and stated to defendant that it was time to effect the re-exchange of said stock, and defendant replied by assuring plaintiff that at an early day he would adjust the matter satisfactorily and return to plaintiff his Life Insurance Company stock, or pay him therefor, and that he need not be uneasy. He further pleaded that he would not have agreed to the arrangement proposed by O. E. Stuart and have exchanged stocks, had he not been advised by the defendant and by O. E. Stuart that the latter represented the defendant, and was acting for him in consummating the agreement thereto-fore made between plaintiff and defendant.

Defendant, by trial amendment, demurred generally to plaintiff's trial amendment, and denied the allegations therein contained, and specially that O. E. Stuart was his agent in the transaction pleaded by plaintiff in his original petition, or was in any way author-ized to act for him, defendant, in said trans-action.

Upon a hearing before the court, judgment was rendered that plaintiff recover from de-fendant the sum of $625, the value of the Life Insurance Company stock, and costs of suit. The judgment further recited that, in the event defendant should, within 20 days from judgment, turn over to the clerk of the court the 50 shares of Life Insurance Com-pany stock to be delivered by said clerk to plaintiff, or his order, the said delivery should constitute a full satisfaction of the judgment rendered, except as to the costs. It was further provided that upon the deliv-ery by defendant of the Life Insurance Com-pany stock to the clerk, said clerk should de-liver to defendant the Guaranty Company stock held by plaintiff and theretofore ten-dered into court. From this judgment the defendant has appealed.

Before considering the questions presented under appellant's several assignments of er-ror, it will be proper for us to direct our attention to appellant's specifications of fun-damental error. These are: (1) The exist-ence of an asserted material variance be-tween the facts alleged by appellee as a basis for recovery and the facts proven, in that plaintiff alleged that he had transferred and delivered to defendant the Life Insurance Company stock, upon the latter's solicitation, whereas, it is alleged the proof shows that said stock was transferred to the Bankers' Guaranty Company and delivered to O. E. Stuart, upon the latter's solicitation; (2) be-cause of a failure of proof to support the allegation that the Life Insurance Company stock had been sold and transferred to R. T. Stuart; (3) because of a variance as to the dates of the alleged transaction, the petition stating that R. T. Stuart induced plaintiff to transfer and deliver to said Stuart said stock on April 25, 1912, whereas, it is urged,

the proof shows that the transaction occurred in 1909 or 1910; (4) that whereas the plaintiff alleged in his petition that appellant had represented to him that there was a combina-tion of stockholders in the Life Insurance Company seeking to control said company to its detriment, and that for his own benefit and for the benefit of said company, etc., it was necessary that said Stuart should be elected president and manager of said com-pany, etc., that there was no proof that ap-pellant solicited plaintiff to transfer said stock to him, or that it was so transferred, that he might vote it for the benefit of said company and the mutual protection of all persons holding stock therein.

[1, 2] In support of his first specification of fundamental error, appellant cites us to the case of Stevenson v. Cauble, 55 Tex. Civ. App. 75, 118 S. W. 811, by this court, opinion by Associate Justice Dunklin, in which it was held that the allegation that misrepre-sentations were made by the principal would not be sustained by proof that such misrep-resentations were made by the agent. In the cited case, the cases of Lewis v. Hatton, 86 Tex. 533, 26 S. W. 50, Arndt v. Boyd, 48 S. W. 771, and Peyton v. Cook, 32 S. W. 781, are cited on this point. As stated in Mims v. Mitchell, 1 Tex. 447:

"The object of pleading is to apprise the court and the opposite party of the facts on which the pleader intends to rely, as constituting his cause of action or grounds of defense. And the averments should set forth the facts relied on with such precision, clearness, and certainty as to apprise the opposite party of what he will be called upon to answer, and what is intended to be proved, so that the evidence introduced may not take him by surprise. Such certainty is essential in order that the facts relied on by either party may be understood by the party who is to answer them, by the jury who are to ascertain their truth, and by the court who is to give judgment upon them."

We feel sure that in the instant case the rule of pleading hereinabove so clearly enun-ciated by our Supreme Court was not violat-ed, and that defendant was, before his an-nouncement of ready, apprised by plaintiff's pleadings of the nature and character of the proof in the respect here involved which would be offered. It is true that plaintiff pleaded in his original petition that the de-livery of the Life Insurance Company stock was made to defendant. But in his trial amendment he stated that the actual transfer of stock was made to the Guaranty Company at the instance of O. E. Stuart, "agent of de-fendant for the purpose of effecting the con-summation and adjustment of the agreement which plaintiff and defendant had made, as set forth in plaintiff's original petition." This latter pleading of plaintiff, while styled a "trial amendment," was rather in the nature of a supplemental petition or a replication to defendant's answer, in which the defendant had alleged the sale by plaintiff of his Life Insurance Company stock to the Guaranty Company, and had attached to said answer a

copy of the memorandum of sale signed by the plaintiff and witnessed by O. E. Stuart. Rule 12 for the District and County Courts (142 S. W. xviii) provides for amendments generally, as contradistinguished from supplemental petitions or supplemental answers, and the function of such amendments is stated in said rule as follows:

"Being to add something to, or withdraw something from, that which has been previously pleaded; so as to perfect that which is or may be deficient, or to correct that which has been incorrectly stated by the party making the amendment."

While the amendments referred to under this rule do not specifically include so-called "trial amendments," i.e., amendments filed after announcement of ready, and while article 1824, Vernon's Sayles' Texas Civil Statutes, requires that all amendments shall be filed before the parties announce ready for trial, yet, in the absence of statutory authority therefor, the practice of allowing amendments, both by plaintiff and defendant, to be filed after announcement, under leave and within the sound discretion of the trial court, is well established and recognized, and no question is here raised by appellant because of the court's permitting this pleading to be filed. Hence we hold that in the light of the allegation in plaintiff's so-called "trial amendment," appellant's contention of variance cannot be sustained. This conclusion disposes of specifications (1) and (2) of alleged fundamental error. The other specifications will be controlled by what we say in discussing the questions raised under the assignments proper.

To sustain the judgment below, two questions must be decided adversely to appellant's insistence, to wit: (1) Whether the plea and proof by appellee of the alleged oral agreement and contract with R. T. Stuart, whereby plaintiff was to loan or transfer his Life Insurance Company stock and receive in lieu thereof and as security therefor the Guaranty Company stock, was an attempt to vary by parol the terms of the contract in writing. (2) Whether the two years' statute of limitation is a bar to appellee's recovery.

[3] While it is true that in the absence of fraud, accident, or mistake, that which purports to be set out in the terms of a contract or agreement in writing entered into between parties may not be varied, in an action between such parties or their privies, by parol evidence to establish a contemporaneous or prior parol agreement which will in any material respect alter, add to, or subtract from, or modify the contract evidenced by the writing, yet this general rule, which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of written instruments, has no application to collateral undertakings or cases in which the written instrument was executed in part performance of an entire oral agreement. 10 R. C. L. p. 1019, § 211, says, in part, as follows:

"Where the parties have reduced an agreement to writing, the writing is supposed to contain all the agreement, and is the only evidence of it; and all prior or contemporaneous declarations and negotiations between the parties are excluded as evidence of the agreement, or any part of it. But where the agreement is not reduced to writing, but is intended by the parties to rest in parol the written instrument being subsequently executed in part execution of the parol agreement, and not for the purpose of putting that agreement in writing, it is well settled that an instrument thus executed does not supersede a prior parol agreement."

Section 213, p. 1020, same text, reads:

"The rule that parol testimony may not be given to contradict a written contract, is applied only in suits between the parties to the instrument or their privies. The parties to a written instrument have made it the authentic memorial of their agreement, and for them it speaks the whole truth upon the subject-matter. It does not apply to third persons, who are not precluded from proving the truth, however contradictory to the written statements of others."

Section 228, Id.:

"The authorities are agreed that a parol contract may be added to a written one, and the two may stand together, though made simultaneously. The same principle declares that the reduction to writing of one feature of an entire transaction, in part execution thereof, does not preclude proof by parol of the other features. Otherwise stated, the rule is that proof is admissible of any collateral, parol agreement or independent fact which does not interfere with the terms of the written contract, though it may relate to the same subject-matter; and whether such collateral agreement was made or independent fact occurred contemporaneously with or as preliminary to the main contract in writing is quite immaterial."

Section 230, Id., is, in part, as follows:

"The rule that where a written contract is made as only a part execution of an entire verbal contract, that portion not embodied in the paper may be shown by parol, applies only where such portion is in itself a distinct, complete contract, not to mere stipulations in regard to and varying the terms on the written contract. What is sought to be shown as a collateral agreement must not in any way conflict with or contradict what is contained in the written contract. Extrinsic evidence is not admissible to show that a contract was partly written and partly oral, if the matter proposed to be made part of the contract by such evidence is inconsistent with the terms of the writing. But the fact that the collateral agreement relates to the subject-matter of the written instrument does not render the admission of such evidence obnoxious to this rule."

Defendant below denied plaintiff's allegations as to the oral agreement, and denied any participation in or knowledge of the transaction between his brother, O. E. Stuart, and the plaintiff, or between the plaintiff and the Bankers' Guaranty Company. Though defendant pleaded the purchase on the part of plaintiff through O. E. Stuart, as agent, of the Guaranty Company stock, and the payment therefor in the Life Insurance Company stock, yet since by his pleadings, and we may say by his testimony, he denied having anything to do with said transaction or being privy thereto in any way, we are unable to say that he places himself in a position to invoke the rule as to parol testimony

which tends to vary, contradict, or otherwise affect the legal effect of a written instrument. Johnson v. Portwood, 89 Tex. 235; Pierce v. Johnson, 50 S. W. 610; Hughes v. Sandal, 25 Tex. 162; Greenleaf on Evidence, vol. 1, § 279a. As sustaining the proposition that the general rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of a written instrument has no application to the collateral undertakings or cases in which the written instrument was executed in part performance of the entire oral agreement, see Hansen v. Yturria, 48 S. W. 795; Preston v. Breedlove, 36 Tex. 96; Green v. Gresham, 21 Tex. Civ. App. 601, 53 S. W. 383, 384; Cummings v. Moore (writ denied) 27 Tex. Civ. App. 555, 65 S. W. 1113; Thomas v. Hammond, 47 Tex. 42; Rose's Texas Notes, vol. 2, p. 795; Landrum v. Stewart, 111 S. W. 769; Davis v. Sisk (writ denied) 49 Tex. Civ. App. 193, 108 S. W. 472; Street v. J. I. Case Threshing Co., 188 S. W. 727; Seitz v. Brewers', etc., Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837; and the well-known Massachusetts case of Durkin v. Cobleigh, 156 Mass. 108, 30 N. E. 474, 17 L. R. A. 270, 32 Am. St. Rep. 436.

[4] Hence, we conclude that as to the first question raised the answer must be adverse to appellant's contention. We think the evidence sufficient to sustain the finding which must be imputed to the court that an oral agreement was had between appellant and appellee in the carrying out of which occurred the transfer of the Life Insurance Company stock to the Guaranty Company, and the transfer by it to plaintiff of 100 shares of its stock. Plaintiff below testified, in part, as follows:

"I had that 50 shares of American Home Life, and Stuart was in trouble—he was about to lose his presidency from that company—and he came up to Bowie, and he insisted on me to help him all I could, and I told him as a friend of mine that I would do so; and he wanted me to let him have my stock so he could vote it. That conversation took place in 1912; I think it was in the spring of the year—it was cool or chilly weather—I think it was in the spring of the year. The conversation took place in my hotel. He wanted the stock to help him out in his company that he started and as a friend—he has been that—I should help him to do so, and I did; and I didn't look at those papers, I just simply took Stuart's verbal statement, 'You know I am a friend of yours, and I wouldn't have you lose a cent for anything in the world, and it is just simply to help me out,' and I said, 'Anything I can do for you, Mr. Stuart, I will be glad to do so,' and I never intended to buy or exchange the American Home Stock for any other kind of stock that I didn't know anything about. After I had agreed to turn over that American Home stock, then his brother came up here. Mr. R. T. Stuart told me about how he would close up the deal; he said, 'I want you to do all you can for me; I am very busy;' and he went, and before he left he said, 'I may have to send my brother up here because I am a very busy man;' and his brother came up here then, and he said, 'I came up here to look after that deal that you and my brother made about that American Home Stock;' and I did that to help him out in his American Home affairs;

I never intended to buy any Bankers' Guaranty stock."

The witness goes on and states that O. E. Stuart, who the evidence shows is the brother of R. T. Stuart, and was the agent of the Bankers' Guaranty Company at the time of this transaction, told the plaintiff that it would be necessary for plaintiff to execute a transfer of his American Home Life Insurance stock to the Bankers' Guaranty Company, and to sign a memorandum of purchase of the Guaranty Company's stock, in order to carry out the agreement which he, plaintiff, had therefore made with R. T. Stuart, who it is shown was president of the Guaranty Company at this time and was also, or had been, president of the American Home Life Insurance Company and owned stock in both corporations. The evidence further shows that about a year and a half or two years prior to the trial of the case, plaintiff met R. T. Stuart at the former's hotel and asked him when he would get his Life Insurance Company stock back, and told him that he wanted the matter fixed up, and that Stuart promised him that he would attend to the same, saying:

"Bob, I will make it satisfactory to you the very next time I come up. You know I am a friend of yours and I will make it absolutely satisfactory to you; you shan't lose a cent."

[5] While it is true that in another place, under cross-examination, the witness stated that he could not tell whether the first conversation he had with R. T. Stuart in regard to the stock transaction was in 1909 or 1910, stating:

"It was five or six years ago; but I couldn't tell you when. I cannot recall those dates"

—yet since the date of the instruments upon which appellant relied to defeat plaintiff's action shows that the transfer of stock was effected in 1912, we think the court was entirely justified in giving credence to that portion of plaintiff's testimony where he stated that the first conversation had with Stuart relative to this matter was shortly prior to the time when O. E. Stuart came to Bowie and secured his Home Life Insurance Company stock.

[6] We are further of the opinion that the judgment must be sustained on the question of limitation. If the parol agreement between R. T. Stuart and plaintiff was made in fact as contended by plaintiff, and if in fact these written instruments were executed by plaintiff and the exchange of stocks effected merely in pursuance of the larger oral agreement, defendant bore to plaintiff a trust relation with reference to the holding of the 50 shares of Life Insurance Company stock, and limitation would not begin to run in favor of the trustee until a repudiation by him of such trust relationship, and until the cestui que trust had, in the exercise of due diligence or by constructive notice, discovered such repudiation. Neyland v. Bendy, 69 Tex. 711, 7 S. W. 497; Cole v. Noble, 63 Tex. 432;

Pitman v. Holmes, 34 Tex. Civ. App. 485, 78 S. W. 963. In this connection plaintiff testified:

"As to whether I ever talked to Mr. Stuart after I parted with my stock, I will say, I don't know how long it was. I wrote a letter, and it was quite a long time afterwards, and Stuart assured me that he would be up, and he was up one time, and Mr. Stuart said: 'Bob, I am very busy. I haven't got absolutely no time to attend to it, but I will be up again in a very short time.' "

Then follows the testimony quoted hereinabove.

[7] From this evidence it would seem that the court was justified in concluding that up to within two years prior to the filing of the suit, defendant had admitted his trust relationship as to the American Home Life Insurance Company stock, and had promised an early return thereof. Wherefore we conclude that defendant's plea of limitation ought not to be sustained.

All assignments of error are overruled, and the judgment is affirmed.

## On Motion to Certify.

[8] Appellant's motion to certify is based on several grounds of alleged conflict with the decisions of Courts of Civil Appeals and the Supreme Court. A conflict with a decision of the Supreme Court is not authority for certifying the question involved. Article 1623, Vernon's Sayles' Texas Civil Statutes; T. & P. Ry. Co. v. Willson, 101 Tex. 269, 106 S. W. 325.

[9] I. It is claimed that in holding that if the parol agreement between defendant and plaintiff was as claimed by the latter, defendant bore a trust relation to plaintiff with reference to holding the 50 shares of the Life Insurance Company stock, we are in conflict with the San Antonio Court of Civil Appeals, in Bundren v. Lehr Agricultural Co., 40 S. W. 205; with the Amarillo Court, in Pollard v. Allen, 171 S. W. 530; with the Supreme Court, in Phillips v. Holman, 26 Tex. 277. In the Bundren Case was involved a contest between the daughter and a judgment creditor of the father, the latter, through the constable, having levied upon certain lots in the name of the father, but which the daughter claimed by virtue of an alleged agreement of her father to give her thereon a written lien to secure borrowed money. While the facts of the two cases are in no wise similar, nor the questions of law involved identical, yet appellee quotes from the opinion the following language, claiming it to be expressive of a holding contrary to ours in the instant case, to wit:

"A trust does not arise from a promise of one to convey land in payment of a loan, and neither can it arise from the breach of a mere parol contract. Perry on Trusts, §§ 133, 134."

If any doubt should arise as to the question of conflict here suggested, it is dispelled by reading the text from which Judge Fly quoted as sustaining authority. The author was discussing the question of a trust in the land or other thing conveyed, or sought to be changed, not the relationship between the parties as affecting the question of limitation.

In Pollard v. Allen, supra, was involved the placing of money in bank by Allen to the credit of his uncle, who it was alleged promised to put said money out at interest for the benefit of Allen. The contest was between the executor of the uncle, deceased, and Allen. In the first place, where the very plea of plaintiff shows that the money loaned or placed to defendant's credit, or to the person represented by defendant, was to be loaned out, such plea excludes the theory that the indentical money was intended to be returned, or that any sort of bailment of the chattel itself was created. There are other features in the cited case which we believe distinguish them from the one under consideration. It might be further noted that in 179 S. W. xvi, it is shown that a writ of error was granted in the Allen Case.

While not incumbent upon us in this connection to note the Supreme Court case of Phillips v. Holman, yet we do not feel we are out of harmony with that case. There Phillips transferred to Holman certain shares of stock which Holman agreed to use "as in his judgment would make it most profitable or productive." In the opinion Justice Bell, for the court, said:

"It is true, the contract did not contemplate any particular period of time within which it was to be performed; but it nevertheless implied that it should be performed within a reasonable time, and devolved upon Holman the obligation, after the lapse of a reasonable time, to account to Phillips upon the contract."

The certificates of stock were transferred in 1838, while suit was filed in 1857.

In the instant case, according to plaintiff's plea, the transfer of stock was made, not for the purpose of Stuart's selling it or trading it, but to be held by his designated agent for a specific purpose, and then to be returned.

[10] 2. It is urged that in holding that the plaintiff was not precluded from establishing a larger parol contract of which the written transfer of the Life Insurance Company's certificates was but a part, we are in conflict with the holding of the Austin Court of Appeals in McCullough v. F. & M. Bank, 58 Tex. Civ. App. 160, 123 S. W. 439, and Sims v. Shafer, 133 S. W. 702; with the Dallas Court, in Hendrick v. Chase Furniture Co., 186 S. W. 277; with the Amarillo Court, in Insurance Co. v. Barrington, 180 S. W. 938; with the San Antonio Court, in Wizig v. Beisert et al., 120 S. W. 954. In the interest of brevity, we will state that we have carefully examined each case to which we have been referred, and in our opinion no conflict exists between our holding in this case and that in any case cited. The cited cases merely enunciate the general rule that evidence of prior or contemporaneous parol agreements which are inconsistent with and

tend to vary the terms of a written contract is inadmissible. This rule we thoroughly recognized in our consideration of the questions here involved on original hearing, and we do not believe that in anything we have said has that rule been disregarded.

We do not think we are in conflict with Belcher Land Mortgage Co. v. Norris, by this court, 34 Tex. Civ. App. 111, 78 S. W. 390, in the expression used in this opinion, to wit: "* * * He [Stuart] denied having anything to do with said transaction or being privy thereto in any way, and we are unable to say that he places himself in a position to invoke the rule as to parol testimony which tends to vary, contradict, or otherwise affect the legal effect of a written instrument."

While we do not believe any conflict of law has been pointed out, yet, as we construe the allegations of the petition with reference to the amount in controversy, the cause was one over which the district court had exclusive original jurisdiction, and therefore the appellant may invoke the jurisdiction of the Supreme Court by applying for writ of error, and he is not without remedy in case we are in error in our expressed views.

The motion to certify is overruled.