NELSON v. GULF, C. & S. F. RY. CO. et al. (No. 6248.)

(Court of Civil Appeals of Texas. San Antonio. June 11, 1919. Rehearing Denied June 30, 1919.)

1. LIMITATION OF ACTIONS ☞41 — FOUR YEARS STATUTE—SET-OFF.

A claim by a judgment debtor that creditors had purchased property at a prior execution sale for much less than its value is a claim by way of set-off against the creditors' demand for satisfaction from other property, constituting a cross-action and not a mere defense, and was barred by the four-year statute.

2. LIMITATION OF ACTIONS ☞41—SET-OFF—DOCTRINE OF COMPENSATION.

The civil-law doctrine of compensation is applied only in cases of running accounts between merchants and by analogy to running accounts between other parties, and does not apply to a claim by a debtor to his creditors, who had purchased property at a prior execution sale for much less than its value.

3. LIMITATION OF ACTIONS ☞103(3)—TRUST —REPUDIATION.

Though judgment creditors had by their agreement become trustees for the judgment debtor, they repudiated such trust by purchasing the property at execution sale, and the statute of limitation against any right to relief against such purchase begins to run from that date.

Error from District Court, Bexar County; W. S. Anderson, Judge.

Interpleader by the Gulf, Colorado & Santa Fé Railway Company and another against J. P. Nelson and others. From a judgment awarding a part of the sum in controversy to others, J. P. Nelson brings error. Affirmed.

A. C. Bullitt and George Powell, both of San Antonio, for plaintiff in error.

Ball & Seeligson and C. W. Trueheart, all of San Antonio, for defendants in error.

MOURSUND, J. The defendants in error's statement of the case is adopted, as follows:

"This suit was instituted by the filing of interpleader of the Gulf, Colorado & Santa Fé Railway Company and the Atchison, Topeka & Santa Fé Railway Company, November 8, 1917, by which was deposited and laid at the disposition of the court the sum of $75,250 (aggregating, with interest, $109,200.28), the amount of J. P. Nelson's recovery in his suit against these railway companies; said J. P. Nelson and various creditors of his, including J. K. Lamm, Frank R. Newton, and Ernest J. Lamm, the defendants in error herein, being made parties defendant.

"On November 17, 1917, the defendants Lamm, Newton, and Lamm filed their answer and motion, alleging that on March 25, 1911, they obtained a judgment against J. P. Nelson for the sum of $36,785, same being decreed a lien upon Nelson's recovery against the railway companies by virtue of an assignment of his cause of action against them, declaring a credit on said indebtedness of $7,898.55, and asking that the balance due with interest be paid them by the depository of the court. The rest of his creditors claimed interests in Nelson's recovery against the railway companies, some by assignment of cause of action, others by garnishments running against said railway companies. Their pleadings are voluminous and have really no bearing on the issues here presented.

"On January 5, 1918, defendant J. P. Nelson filed his second amended original answer, taking issue with the claim of defendants Lamm, Newton, and Lamm, adopting the allegations in paragraph marked 'Second' in defendant Bomar's first amended original answer as against these defendants, and praying that said defendants take nothing against him and that they be made to account for the value of certain stocks and bonds, securities for their debt, as they existed on the 18th day of April, 1911, the date of the sheriff's sale of same to said defendants.

"In the paragraph adopted by defendant Nelson, it is alleged that on June 27, 1908, defend-

ant Nelson executed and delivered to the San Antonio National Bank his promissory note, due one year after date, for $30,000; that to secure said note defendant Nelson pledged and delivered to said bank certain bonds and certificates of stock; that on November 26, 1909, as additional security for said note, defendant Nelson by written assignment attempted to pledge or mortgage to said bank his interest in pending suit against the railway companies, plaintiffs herein; that said note and all of said securities were on May 1, 1910, sold and delivered to defendants Lamm, Newton, and Lamm; that on May 3, 1910, judgment was rendered in favor of defendant Nelson against said railway companies; that on March 25, 1911, defendants Lamm, Newton, and Lamm obtained judgment against defendant Nelson for the sum of $36,785, together with foreclosure of their lien on the stocks and bonds given as security, it being decreed that they had a valid and subsisting lien to secure payment of said judgment upon all of defendant Nelson's interest in his pending suit against the railway companies; that under said judgment order of sale issued April 5, 1911, and defendants Lamm, Newton, and Lamm, on May 18, 1911, purchased at sheriff's sale all such stocks and bonds, they being struck off for the sum of $8,000, which, after the deduction of costs, left $7,898.55 as a credit on their judgment. It is further alleged that defendants Lamm, Newton, and Lamm, by the provisions of the $30,000 note, undertook to act as trustees for the defendant Nelson in the sale of the securities sold at the sheriff's sale; that they did not act in good faith or use due diligence, but sacrificed said stocks and bonds for the grossly inadequate price of $8,000 when they could have sold same for $50,000 or more; that they have realized from their resale more than sufficient to cancel their indebtedness to defendant Nelson; that said sheriff's sale is invalid for the many reasons set out at length, and that they have no title to said stocks and bonds, and that they are not entitled to participate in the fund in court, or at most have only a lien on Nelson's judgment against the railway companies.

"On January 5, 1918, defendants Lamm, Newton, and Lamm filed their supplemental and additional answer, wherein they excepted to the answer of defendant Nelson, as well as the adopted pleading of the defendant Bomar, with reference to their judgment against defendant Nelson and the sale of collaterals thereunder, because same constitutes a collateral attack upon said judgment, and because said attack is barred and precluded by both the two and four year statutes of limitation. An exception was also grounded upon the fact that it appeared that final judgment in the Nelson suit against the railway companies was not had until October 22, 1917, and that thereafter said railway companies deposited the amount of recovery in court in this case, so that there was nothing to foreclose a lien against, but simply a fund out of which these defendants and the lien creditors could be paid.

"All of the above-mentioned exceptions of defendants Lamm, Newton, and Lamm were sustained by the court, and judgment was thereafter rendered in their favor for the full amount unpaid on their said judgment. The disposition made of the other parties is not involved in the issues presented."

[1] Appellant contends that the court erred in holding that the statute of limitation of four years precluded him from obtaining the relief sought by him. To the demand of appellees for payment of the balance alleged to be due on their judgment, which payment was sought to be obtained out of the proceeds of a judgment upon which they had theretofore secured the foreclosure of a lien, the appellant interposed the claim that they should be charged with the value of certain stocks and bonds sold by the sheriff, under an order of sale issued upon a valid judgment, and bought in by appellees; it being alleged that such purchase was for a grossly inadequate price. We will assume, for the purpose of deciding the question whether limitation applies, that appellees on the date of the sale by the sheriff secured the stocks and bonds for a grossly inadequate price, and under circumstances making their act a wrongful one. The sale occurred on April 18, 1911. No question with respect thereto was raised until in 1917, after the railway companies had paid the money into court to satisfy the judgment. Appellees, on November 7, 1917, filed their claim for payment of the remainder due them on their judgment after deducting the credit of $7,898.55 derived from the sale of the stocks and bonds. Appellant did not file his answer until January 5, 1918. It therefore appears that more than four years had elapsed between the date of the sale, and the filing of appellees' said pleading, and in fact before the institution of the suit by the railway companies in which such pleading was filed. While the principal purpose of appellant, as disclosed by his prayer, is to have appellees' claim extinguished by applying thereto a sufficient part of the difference between the value of the stocks and bonds on April 18, 1911, and the sum for which they were sold, it is not clear that he did not seek to recover a judgment for the excess, if such difference in value should be greater than the amount due on appellees' judgment. This, however, is immaterial, for, even if appellant only desired to insist upon such part of his claim as would be necessary to extinguish the judgment against him, the nature of the claim would not be altered.

[2] The doctrine known to the civil law as "compensation" can have no application in this case, for it is well established that it is only applied in Texas to cases of running accounts between merchant and merchant, and by analogy to running accounts between parties not merchants. Hall v. Hodge, 2 Tex. 323; Holliman v. Rodgers, 6 Tex. 98; Howard v. Randolph, 73 Tex. 459, 11 S. W. 495; Ney v. Rothe, 61 Tex. 377; Campbell v. Park,

11 Tex. Civ. App. 457, 33 S. W. 754. If the matter pleaded was in set-off to appellees' claim, or in the nature of a plea in reconvention, the limitation was complete, even applying the four-year statute.

If appellant's answer sets up any defense to appellees' demand that the balance of their judgment be paid out of the proceeds of the recovery against the railroad companies, such defense necessarily is that appellees' judgment is paid in whole or in part; such payment being accomplished by simply offsetting against the judgment a sufficient part of the damages claimed by appellant to extinguish the judgment. There can be no doubt that, if appellees were guilty of conversion of the stocks and bonds, appellant's cause of action arose at the time of their purchase thereof for an inadequate price. He could have sued at once and prosecuted his suit to judgment for the difference between what they paid and the actual value of the securities, independently of appellees' claim against him. It is therefore evident that the matters urged by him constitute a cross-action, and not a defense to the claim of appellees. Nelson v. Traction Co., 107 Tex. 180, 175 S. W. 434; Ft. Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S. W. 908.

[3] Appellant makes the further contention that limitation did not run for the reason that appellees became trustees in the handling and sale of the stocks and bonds, and their possession therefore was not adverse after the purchase made by them. It does not clearly appear upon what provision of the contract or pledge appellant relies to establish the relation of trustees and cestui que trust. We presume it is the clause which authorizes a sale by appellees of the stocks and bonds at private sale. Such a right is of course merely additional to the right to foreclose the lien in court, and have a judicial sale, and when sold at a judicial sale to the highest bidder there can be no doubt of the right of the pledgee to purchase. We are unable to see any basis for the contention that appellees were guilty of conversion, but if it be conceded that they were because a trust relation existed, it is clear that they distinctly terminated and repudiated such relation when they purchased the stocks and bonds. It is also clear that appellant had immediate notice of such repudiation, and yet he failed to sue for more than six years. It is therefore clear that, even though a trust relation existed, appellant's claim is barred by limitation. Home Investment Co. v. Strange, 195 S. W. 849; Beaumont Rice Mills Co. v. Port Arthur, 141 S. W. 349; Stuart v. Meyer, 196 S. W. 615.

The judgment is affirmed.