**MOSSLER ACCEPTANCE COMPANY,**
Appellant,

v.

**J. C. TIPS, III, d/b/a J. C. Tips Motor
Company, Appellee.**

No. 12956.

Court of Civil Appeals of Texas.

Galveston.

March 29, 1956.

Rehearing Denied April 19, 1956.

Painter, Painter & Cook and W. Lawrence Cook, Jr., Houston, for appellant.

Levert J. Able and Thomas J. Graham, Houston, for appellee.

GANNON, Justice.

Mossler Acceptance Company, which was defendant below, appeals from a money judgment against it in favor of appellee, J. C. Tips, III, plaintiff below, in amount of $11,028.80, plus $500 attorney's fees, interest and costs. Judgment followed a jury trial in which the single issue submitted to the jury was:

"What do you find from a preponderance of the evidence to be the present balance, if any, due and owing to J. C. Tips, III, from Mossler Acceptance Company after the allowance of all proper offsets, credits and payments, if any, shown by a preponderance of the evidence to exist in favor of either party?"

The jury's answer to this issue was, "Eleven Thousand Twenty-eight and 80/100 ($11,028.80) Dollars."

The case was filed, improperly, we think, as a suit on sworn account. Defendant answered by sworn denial and later during the course of the trial by trial amendment wherein defendant set up its right to cer-

tain offsets, credits and payments against the claims of plaintiff. The proceedings then turned into an accounting suit involving many items of debit and credit between the parties, arising out of their long course of dealing with each other. On this appeal, in reliance on its unsuccessful motion for judgment non obstante veredicto, the sole point urged by appellant is the entire want of any *competent* evidence to sustain a series of credits claimed by plaintiff, all being in the nature of deferred contingent payments. These had been set up by defendant on its books, which were introduced in evidence.

Plaintiff is a dealer in secondhand automobiles. Defendant is a finance company engaged in the business of financing loans to purchasers of automobiles. The dealings between the parties on which the appeal arises may be understood from the following:

Plaintiff Tips would sell automobiles to various purchasers for a purchase price, payable partly in cash and partly on credit in deferred monthly payments. The unpaid part of the purchase price would be evidenced by notes secured by chattel mortgages on the automobiles denominated by the parties' conditional sales contracts. The principal of the notes would include, in addition to the unpaid purchase money, financing and insurance charges. For many years, plaintiff would sell these notes to defendant for cash in the full amount of the unpaid purchase money only. Insurance premiums would be advanced by the defendant and the amount of the notes representing the premiums and finance charges would be collected and retained by defendant for its own reimbursement and for the use of its money. About 1951, the market for secondhand automobiles became shaky and went on the downgrade. Defendant then became unwilling to purchase the paper—for sums absolutely payable—in the full amount of the unpaid purchase price of the automobile, but was willing, in respect to a part of such unpaid purchase price, to bind itself only upon certain contingencies. The parties differ in their testimony in respect to the exact provisions of their agreement in regard to these contingencies, but the jury accepted plaintiff's version, and a statement of plaintiff's contentions in respect thereto will suffice for this appeal. Plaintiff testified to a series of transactions relied upon by him, some 350 in number, of which the first is fully illustrative, to-wit: the sale by him to defendant of the conditional sales contract representing, in addition to insurance and finance charges, $550 of unpaid purchase money due by Jesse B. Anderson on the sale by plaintiff to Jesse B. Anderson of a secondhand automobile. In this particular transaction, the unpaid purchase money was $550. There was added to this unpaid purchase money insurance and finance charges in the amount of $233, and the conditional sales contract was executed for a total face amount of $783. Prior to the Anderson transaction, on a sale of such paper to defendant by plaintiff, plaintiff would be paid therefor the sum of $550 in cash; but, in the Jesse B. Anderson transaction, because of the doubtful value of the security, the parties agreed orally that plaintiff would assign the Anderson conditional sales contract to defendant and in consideration thereof defendant would pay to plaintiff in cash at the time of the transfer, not $550, the full amount of the unpaid purchase money, but only the sum of $500. However, defendant contingently agreed to pay to plaintiff some months later, in this instance February 5, 1952, the sum of $50; provided the car had not been repossessed by defendant prior to that time. If, prior to the due date of the contingently deferred payment of $50 defendant had repossessed the car, then the understanding was that if defendant should notify plaintiff of that fact in writing and give the plaintiff the opportunity to purchase the car for the amount of the unpaid balance of the paper, and plaintiff should elect to make such purchase, the deferred $50 would become absolutely payable at the time agreed upon, but subject to the further understanding that if plaintiff, on such written notice, should elect not to purchase the paper within three days after notice, that fact would

defeat his right to the $50 deferred payment. Plaintiff further testified it was the understanding that if the car had not been repossessed before the due date of the deferred payment, such payment was to be absolutely due.

As above stated, plaintiff testified to a series of several hundred transactions essentially the same as the Anderson note transaction, and to the fact that although the dates upon which the deferred payments in such transactions came due had passed without plaintiff's receiving any notice of repossession from defendant, so that such payments became absolutely due and payable, still the defendant had failed and refused to make such payments. The exact total of the items is not important, but the figure is recited in appellant's brief to be in excess of $12,000, and it is apparently conceded that the total of these items is a figure in excess of the answer of the jury, finding defendant indebted to plaintiff in the amount of $11,028.80.

According to plaintiff, each transaction was separately negotiated, plaintiff agreeing to assign the various conditional sales contracts in consideration of defendant's agreement to pay for same in part immediately and in cash, and in part in the future, contingent on the understandings above set out. It is undisputed in the evidence that in executing the oral agreements plaintiff would assign the conditional sales contracts to defendant in writing, sometimes with full recourse and sometimes with partial recourse only, or sometimes without recourse, and that contemporaneously defendant would issue to plaintiff its check for the amount of the cash payment the parties agreed upon as being immediately payable. In each instance there was attached to these checks a stub, of which the following is typical:

| "Account Number | In Payment of | Amount | | Distribution | |
|---|---|---|---|---|---|
| | | Debit | Credit | Account Number | Amount |
| 77956 | Jesse B. Anderson | 783.00 | | 3–1110 | 500.00 |
| | | | 233.00 | Brok. | |
| | Deferred Payable due | ... | 50.00 | 3–2410 | |
| | 2/5/52 | | | | |
| | 3–2430  $42.50  ... | | | | |

Detach before depositing        Mossler Acceptance Company"

The $500 figure shown under Distribution in the check stub represents the amount of the check, or cash, paid by defendant to plaintiff for the paper at the time of its sale. The credits of $233 and $50, respectively, represent insurance and finance charges and, as is plainly indicated, the deferred payment, which, in the instance of Jesse B. Anderson sale, was payable contingently, of course, on February 5, 1952.

When plaintiff offered these check stubs in evidence, in corroboration of and as a guide to his testimony, defendant objected on the ground (a) That the contract of assignment (of the conditional sales contract) would be the best evidence of the agreement between the parties. It is evident from the record that by this ground of objection defendant did not refer to the verbal contract or understanding for the assignment, but to the written assignment signed by plaintiff in the actual execution of the verbal understanding or arrangement for the sale of the paper; (b) Because, if the check stubs have any bearing on the agreement, it would be only a fragmentary portion of it and would not be evidence of an obligation of defendant to make payment of the amount "deferred" noted on the stub; (c) Because there has been no showing of a complete agreement and no showing of the meaning of the word "deferred"; (d) Because there was no

showing of an unqualified agreement on the part of the defendant to pay the amount noted on the check stubs; and (e) Because there was no showing that the conditions precedent to the obligation to pay had occurred. These objections were overruled by the court. Defendant brings them forward in conjunction with its complaint of the court's failure to grant its motion for judgment non obstante veredicto, but its only point seems to be that, exclusive of the check stubs, there was no competent evidence of the terms and provisions of the various contracts and understandings which form the basis of plaintiff's claim. This, in turn, if we read plaintiff's brief correctly, is bottomed on the proposition that before plaintiff could recover on the basis of the plaintiff's claims of the understandings or arrangements, the burden was upon him to introduce the assignment which he made to defendant of each and every conditional sales contract in dispute. Differently put, it is defendant's contention that plaintiff was under the burden of proving *all* of the terms of the contractual arrangements upon which he relied and that when he failed to offer in evidence the written assignments of the sales contracts, he fell short of discharging this burden. Defendant says this is so because these written assignments were an' integral part of the contract between the parties for the purchase and sale of the paper and the only competent evidence of that part of the contract, at least.

We overrule appellant's contentions.

█ In our opinion, defendant mistakenly asserts that the parol evidence rule is applicable to written instruments signed and delivered in the execution or carrying out of a contract. Under the authorities, the rule seems to have no application to these instruments, but only to such writings, if any, as evidence the contract itself; and where, as here, it is undisputed in the evidence that the agreement for the sale of the paper, and all of the terms and provisions thereof, as distinguished from the actual execution of the contract, were verbal, the rule has no application. This view of the law seems to be universal and

has been announced in our State in Stuart v. Meyer, Tex.Civ.App.1917, 196 S.W. 615, 618, writ refused. We quote:

"While it is true that in the absence of fraud, accident, or mistake, that which purports to be set out in the terms of a contract or agreement in writing entered into between parties may not be varied, in an action between such parties or their privies, by parol evidence to establish a contemporaneous or prior parol agreement which will in any material respect alter, add to, or subtract from, or modify the contract evidenced by the writing, yet this general rule, which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of written instruments, has no application to collateral undertakings or cases in which the written instrument was executed in part performance of an entire oral agreement. 10 R.C. L. p. 1019, § 211, says, in part, as follows: 'Where the parties have reduced an agreement to writing, the writing is supposed to contain all the agreement, and is the only evidence of it; and all prior or contemporaneous declarations and negotiations between the parties are excluded as evidence of the agreement, or any part of it. But where the agreement is not reduced to writing, but is intended by the parties to rest in parol the written instrument being subsequently executed in part execution of the parol agreement, and not for the purpose of putting that agreement in writing, it is well settled that an instrument thus executed does not supersede a prior parol agreement.' "

The modern text found in 20 Am.Jur., "Evidence," Sec. 1106, page 969 et seq., is in accord:

"§ 1106. Writings Not Constituting the Contract.—There may be writings relating to the contract between the parties which do not embody the contract itself. In such a case, where the contract rests upon an oral agreement, parol evidence is admissible as to the terms of the contract notwithstanding the writings. * * *. Before the rule that no parol evidence can be received to vary the stipulations of a writing

alleged to be a contract between the parties to a cause on trial can apply the writing must be shown to be their contract. * * *.

"Where the agreement is not reduced to writing but is intended by the parties to rest in parol, the written instrument being subsequently executed in part execution of the parol agreement, and not for the purpose of putting that agreement in writing, it is well settled that an instrument thus executed does not supersede a prior parol agreement."

█ We are convinced under the record before us that the agreements and understandings pursuant to which the paper was sold were entirely oral. They were fully testified to by plaintiff. There can be no question that there was no writing reflecting the terms and provisions of the understanding in respect to the conditions upon which the deferred payments would become absolutely payable. We quote the testimony of Mr. Seaman, vice-president of defendant, with whom, in the main, the several arrangements for the purchase of paper by defendant were negotiated.

"Q. Mr. Seaman, do you have any agreement in writing with Mr. Tips as to whether or not he is getting a notice, he will be entitled to get a notice that a car is being repossessed and any agreement in writing with him that will show whether or not the deferred agreement, the deferred charges are charged against him on your theory, that is, only when six payments have been made, although the check here says 'due in six months'. Do you have any agreement in writing with him to that effect? A. No. It is agreed upon as to those dates. In other words those dates—

"Q. Well, just, do you have an agreement in writing? A. No, I don't have any agreement.

"Q. Did you make this oral agreement with Mr. Tips as to when the deferred charges would be, or was that just your general practice? A. I gave the orders out in the office and they know how to handle them."

We hold that the plaintiff's objections, based on the parol evidence rule, to the admission in evidence of the various check stubs in corroboration of plaintiff's testimony are insupportable and that the check stubs were properly admissible in evidence in the light of plaintiff's testimony explaining them, and also as being in the nature of admissions against interest and as tending to corroborate plaintiff's version of the oral arrangements between him and defendant. We know of no rule of law which would require the plaintiff to introduce the written assignments before he could introduce these check stubs. The written assignments were no part of his case except as consideration for the deferred payments and the defendant did not claim that plaintiff fell down on his part of the contract by failing to execute and deliver them. If plaintiff's endorsement with recourse in some instances, which plaintiff admitted, has resulted in any cause of action accruing in favor of defendant against plaintiff, there is nothing in that fact which would deprive plaintiff of the right to be paid or receive credit for the deferred payments upon which he predicated his claim. Liability in plaintiff on his assignments with recourse would, on the other hand, it seems to us, tend to strengthen plaintiff's right to the deferred payments. Otherwise, defendant would be permitted to eat its cake and have it too. Defendant does not claim that it was denied any offset or counter-claim to which it may have been entitled because of plaintiff having assigned any of the notes with recourse.

█ As we read plaintiff's testimony, the arrangement was not for a deferred payment on condition precedent, as claimed by defendant, but was one under which the deferred payments were subject to being defeated on condition subsequent, in the absence of which they became absolutely payable.

Our review of the evidence convinces us that plaintiff's evidence clearly establishes a series of understandings and arrangements between him and defendant, under which these deferred payments be-

came due unless defeated by condition subsequent, and also that in respect to the items on which he recovered such evidence establishes the non-occurrence of such condition subsequent.

Affirmed.