EMMONS et al. v. JONES et al. (No. 8688.)

(Court of Civil Appeals of Texas. Dallas. Nov. 25, 1922. Rehearing Denied Jan. 6, 1923.)

1. Acknowledgment ⬥62(2)—Evidence insufficient to destroy conclusive effect of certificate.

Viewed in the light of an agreement that grantor was to turn over real property to grantee to be sold and grantee's debt against it first satisfied, evidence of grantor and wife that they signed, but never acknowledged, the deed *held* insufficient to destroy the conclusiveness of certificate of acknowledgment.

2. Trusts ⬥44(2)—Evidence showed conveyance in trust for grantor.

Evidence that land was deeded to grantee to be sold and grantee's debt first satisfied, when balance of amount received was to be turned over to grantor, *held* sufficient to show creation of trust in grantor's favor.

3. Trusts ⬥44(3)—To establish parol trust against holder of legal title, evidence must be convincing.

To establish a parol trust against a holder of legal title, evidence must be clear, convincing, and satisfactory, and if susceptible of reasonable explanation on any theory other than the alleged trust, no trust will be declared.

4. Limitation of actions ⬥39(1)—Action to declare deed a mortgage or deed in trust barred by four-year statute.

The right to bring an action to declare a deed to be a mortgage or deed in trust for which no limitation is prescribed is governed by Vernon's Sayles' Ann. Civ. St. 1914, art. 5690, which provides for four-year limitation for every action other than for the recovery of real estate for which no limitation if otherwise prescribed.

5. Limitation of actions ⬥103(2)—Limitation did not begin to run till grantor's discovery of grantee's repudiation of trust relationship.

Where land was conveyed to grantee to be under his control for sale and his debt first satisfied and the remainder turned over to grantor in grantor's action to declare the deed a mortgage or deed in trust, limitation did not commence to run till grantor discovered, or ought to have discovered by exercise of proper diligence, that grantee did not intend to carry out the trust relationship.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by J. H. Emmons and another against J. R. Jones and another. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

W. W. Ballew, of Corsicana, for appellants.

W. E. Spell, of Waco, for appellees.

VAUGHAN, J. It is contended by appellees, in support of the action of the trial court in instructing a verdict in their favor: (1) That the deed of date October 3, 1914, executed by appellants to appellee Jones was properly executed so as to take effect as a conveyance, and that the evidence offered by appellants to impeach the certificate of acknowledgment thereto was not sufficient to authorize the submission of such issue to the jury; (2) that the evidence did not establish the existence of a trust in favor of appellants in reference to the land described in said deed of conveyance; (3) that if such trust relationship ever did exist, same was repudiated by appellee Jones, and knowledge of such repudiation brought home to appellants so as to defeat appellants' cause of action by the four-year statute of limitation.

Appellants, claiming title to and the possession of 123.7 acres of the Richard Hazard survey in Navarro county, described by field notes in their petition filed December 1, 1919, against J. R. Jones and D. Thornton, sought to have declared a certain instrument, on its face purporting to have been executed by appellants on October 3, 1914, to appellee J. R. Jones, which was in the form of a deed, to be a mortgage or deed in trust to secure the unpaid purchase money due by appellant J. H. Emmons to appellee Jones, and for an accounting with Jones for rents paid during the years 1915, 1916, 1917, 1918 and 1919, which, it was alleged, were by agreement between said Jones and Emmons to be credited upon interest accrued, and to accrue, upon indebtedness due Jones, and balance upon unpaid principal; and, in the event appellee Thornton was held or found to be an innocent purchaser, for a recovery against Jones for the difference between what appellant J. H. Emmons might be due Jones on original purchase money for said land and the amount for which appellee Jones had sold the land to Thornton.

Emmons and Thornton answered by general exception, general denial, limitation of two and four years in favor of appellee Jones, an innocent purchaser in favor of appellee Thornton.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Trial resulted in judgment in favor of appellees on verdict rendered under instructions of the trial court.

Appellants complain of the action of the trial court in refusing to give to the jury their special requested charges to the effect:

"(1) That J. H. Emmons was entitled to recover from the defendants the difference between the unpaid purchase money he owed Jones for the land and the purchase price paid Jones by Thornton for said land;" and "(2) that plaintiffs were entitled to recover the land from defendants subject to a lien in favor of defendant Jones for the unpaid balance due as purchase money after allowing, as credits, all sums paid upon the purchase price in the way of interest, rents, and profits received by defendant Jones in the handling and management of said land, including the money or property paid Jones by Freeman in the trade between Jones and Freeman."

[1] To determine the several issues presented as above outlined, we will, of necessity, be governed entirely by the evidence as contained in the statement of facts before us. Following are all the facts proved bearing upon the issue concerning the authenticity and validity of the certificate of acknowledgment attached to the instrument, purporting on its face to be a general warranty deed executed by appellants to appellee Jones: The certificate on its face shows that appellants appeared before J. H. Gillam, a notary public of Hill county, and, in the manner and form required by law, each acknowledged said deed of date October 3, 1914, conveying the above tract of land to appellee Jones. In reference to the act of signing and acknowledging said instrument by appellants, the testimony established the fact that appellee Jones was not present at the time said acts took place, and that appellant J. H. Emmons was not present when his wife, appellant Mrs. Martha M. Emmons, signed and acknowledged said instrument as shown by the certificate of the notary attached to same. As to the signing and acknowledgment of said instrument by appellant J. H. Emmons, he testified as follows:

"The instrument you show me is a deed (witness referring to the deed of date October 3, 1914, executed by appellants to appellee Jones). The first time I saw that instrument Mr. J. H. Gillam had it in his possession. I told Mr. Gillam that this was not in accordance with our agreement, and that I would not sign this deed; that I was expecting a contract or deed of trust. He presented the paper, and I looked it over and said, 'This is a warranty deed;' and he said, 'Yes; it is a deed;' and I said, 'This is not in accordance with my agreement with Mr. Jones, and I won't sign it; it is a fraud in the face of it.' I said, 'I can't acknowledge a paper of that kind and I will not do it.' Well, he insisted that I sign it; that Mr. Jones would make it all right if I would sign and would treat me right. And he said, 'Mr. Emmons, our time is worth money;' and I said, 'Why didn't Mr. Jones come himself;' and he said, 'Well, you know Jim is going here and yonder, has so much business he couldn't come and see about it, and he sent me for this purpose.' And he said, 'Jim will make it all right; just go ahead and sign it.' So I told him that I would sign it, but wouldn't acknowledge it; that I would sign my name, put my signature on it, but wouldn't acknowledge the contents. I said, 'I will sign it under protest; I protest against a paper of this kind, because it is not in keeping with our agreement.' And he said, 'That will be all right; go ahead; you will never have any trouble; Jim will treat you right.' And I said, 'Mr. Gillam, I want to call your attention to the fact that if Jim Jones undertakes to run this over me as a warranty deed I am going to contest it;' and he said, 'You will have no trouble about it; I assure you that you won't; Jim will treat you right; you will not have any trouble; Jim will soon sell this land, and you will get your money, and Jim will get his money and everything will be all right.' And so I said, 'I will sign it under protest;' and I signed it. I was not present when my wife signed that instrument. After I signed it Mr. Gillam said, 'I will drive on over to your house and have your wife sign this paper;' and I said, 'Drive on over there, Mr. Gillam, and wait until I return; my wife won't sign that paper, I know she won't;' and he said, 'Well, Mr. Emmons, we are a long ways from home, and time is very precious; suppose you write her an order to sign this;' and I said, 'I will do that in this way; I will write her an order to sign this instrument, but acknowledge nothing.' That was my wording, 'to acknowledge nothing.' I never went back to the house with them, and never saw them any more that day."

Mrs. Martha M. Emmons, in reference to signing and acknowledging said instrument testified as follows:

"I was at home on the 3d of October, 1914. I remember when Mr. J. H. Gillam and Mr. Davis were there. I do not know anything about the date, but they were there in 1914. I didn't know then who those men were; I had never been introduced to them before. They told me the purpose of their coming, and one of them offered me a paper to read. They first handed me a note from Mr. Emmons. (meaning her husband, J. H. Emmons, one of the appellants). As soon as I read it I threw it on the floor or on the bed. I do not know anything about where it is now, and haven't possession of it. It was a note in Mr. Emmons' handwriting. He [Mr. Gillam] offered me a paper to read, and I said, 'I won't read it; I don't want to have anything to do with it at all;' and he then read the paper over to me. I told him I wouldn't sign it and he kept arguing with me, and finally I told him I would sign the paper, but wouldn't acknowledge it. I do not know which one of them gave me the paper. After I signed it I just turned and walked out of the room. At this time the old gentleman told me to wait, that he wanted to take my acknowledgment, and I said, 'I have no acknowledgment to make; I only signed it to keep down trouble;' and walked out of the room. After I signed it he did not explain it to me. None of the parties paid me any money at that time. The man that took this deed did

not read over the acknowledgment nor ask me the questions contained in the acknowledgment."

In the light of the agreement between appellant J. H. Emmons and appellee Jones preceding the execution of the deed and the subsequent acts and conduct of the parties thereto as revealed by the testimony of appellant J. H. Emmons, the evidence assailing said certificate of acknowledgment was not sufficient to destroy the conclusive effect of same as to the facts therein stated.

Appellant J. H. Emmons testified that the day before said deed was executed he had a conversation with appellee Jones, in which the indebtedness due by him to Jones was discussed, and the following proposition made by Jones, to wit:

"If you will make this property [referring to the property conveyed by the instrument involved on this appeal] over to me some way or another, so that I can control it and collect the rents, as much as one-third and one-fourth on the rents, I will accept it whether it is much or little as a payment on the place until the place can be sold, and when the place is sold— you and I will both try to find a buyer—my money is all I want out of it, and you can have the balance; I got nothing out of the place last year."

That night Emmons called Jones, and told him to come down next morning, and he would make the place over to him according to the above agreement. Said appellant further testified:

"I had an agreement with Mr. Jones that I would make the place over to him and allow him to control the place, and that I would remain on the place until it was sold, and, when the place was sold he was to collect his notes out of the proceeds and pay me the balance. I was to pay rent until that was done. That is the agreement that I made with Jones down in the field on October 2, 1914."

After the execution of the deed by appellants to appellee Jones, W. A. Freeman and appellee Jones looked over the place in company with J. H. Emmons, who was then residing on same. Mr. Emmons had a conversation with Mr. Freeman, in which Freeman told him he was trading with Mr. Jones for the place. Emmons knew that Freeman was looking over the place with a view to buying it from Jones. Soon after this examination of the land and improvements by Freeman, he returned and told Mr. Emmons that he had traded for the place, and Emmons paid rent to Freeman for 1916 and 1917.

In 1919 one D. Thornton, in company with appellant J. H. Emmons and two other parties by the name of Ungery and Lee, looked over the place. At this time Mr. Thornton informed appellant Emmons that he had purchased the place on October 18 of that year. At no time during the transactions had in reference to said property by and between appellants and Freeman did either of the appellants question the validity of the conveyance executed by them to Jones and under which he was acting in conveying said property. It is not alleged that any fraud was perpetrated upon appellants by the grantee Jones, or that he was present at the taking of the acknowledgment of either of said appellants, or knew anything about the manner in which same were taken.

Under the facts and circumstances surrounding the execution of said deed and the acknowledgment of same as evidenced by the certificate of the officer thereto attached, we must hold that said certificate is conclusive of the facts therein stated, and the trial court did not err in so holding. Herring v. White, 6 Tex. Civ. App. 249, 25 S. W. 1016; Atkinson v. Reed (Tex. Civ. App.) 49 S. W. 260; Miller v. Yturria, 69 Tex. 549, 7 S. W. 206; Ellis et al. v. Lehman et al., 48 Tex. Civ. App. 308, 106 S. W. 453.

[2] The following undisputed facts testified to by appellant J. H. Emmons established that, as between the parties thereto, the deed of conveyance executed by appellants, as vendors, to appellee Jones, as vendee, was a conveyance in trust or such conveyance as to create a trust estate, to wit:

"Between the 1st and 3d of October, 1914— I don't remember the exact date—Mr. Jones came to me in the field where I was and said: 'Emmons, I am not coming to see you any more. If you don't do something I am going to foreclose on you, and I will dispossess you. I will levy on the place and will dispossess you, and if you replevy you will have to make a large bond; and if you don't do something to-day I am going to file suit against you to-morrow and foreclose on it. But I have a proposition to make you that I believe is fair, and, if you will accept it, I believe it will be better for you.' And I said 'All right, Mr. Jones, let's hear it,' and he said, 'Emmons, if you will make this property over to me some way or another so that I can control it and collect the rents, as much as one-third or one-fourth—that's as much as I would get out of the place anyway even if I owned the field—and if you will make it over to me and pay me a third and fourth of each crop, I will accept it whether it is much or little as a payment on the place until the place can be sold. You and I will both try and find a buyer, and when the place is sold my money is all I want out of it, and you can have the balance; my money out of it is all I want; I got nothing out of the place last year, and all I want is some remuneration for my investment.' And I said, 'That's a fair proposition,' and he said, 'If you don't do that I am going to file suit to-morrow, and I will dispossess you.' Well, I agreed to do it. Told him I would take the matter up with my wife and let him know, and I called him up that night and told him to come down next morning, and he said he would, but he did not come. He sent Mr. Gillam, Mr. Davis, of Dawson, then justice of the peace, and his son —— Jones. * * * Mr. Jones and I had no agreement to the effect that he would cancel the indebtedness due by me to him. He was to take up, or had already

taken up, the Longbotham notes. He told me he had paid the Longbotham notes in January, 1914. I knew that I owed those notes instead of Jones."

This evidence, we must assume from the record, appellees accepted as being indisputable, or they would have introduced the testimony of appellee Jones, J. H. Gillam, ——— Davis, and ——— Jones, a son of appellee Jones to challenge the correctness of same; said parties being in position to testify in reference thereto, and whose testimony it is not shown was not available to appellees, and which we assume would have been introduced if same would have contradicted the testimony of appellant Emmons.

[3] Under the facts as revealed by the record in this case, supra, the relation that existed between appellee Jones and appellants on October 3, 1914, was that of trustee on the part of Jones to appellants in reference to the tract of land described in the conveyance of that date executed by appellants to appellee Jones. The evidence establishing such relationship is not ambiguous or indefinite, but sufficiently clear and certain to convince reasonable minds that a trust, as asserted by appellants, was in fact created, and the purpose of its creation is positive and definite. The evidence, in our opinion, clearly meets the general rule of law applicable to the establishment of a trust by parol evidence, to wit:

"To establish a parol trust against a holder of the legal title, the evidence must be clear and convincing and satisfactory, and, if susceptible of reasonable explanation on any theory other than the alleged trust, no trust will be declared." Potter v. Potter, 180 Ky. 370, 202 S. W. 872; Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027; Moore v. Crawford, 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878.

Appellee Jones' verbally agreed that if his vendee would reconvey to him the property against which he held indebtedness secured by vendor's lien, he would sell said property, and out of the proceeds pay the amounts due him, and would pay the remainder to his debtor. By this transaction appellee Jones became a trustee for his grantors, and the trust relationship thus created will be by courts of equity recognized and enforced, as it would be inequitable and unjust to permit one who had obtained the conveyance of legal title to be made to himself to appropriate all the benefits acquired thereby to the exclusion of the right of the grantors in the conveyance to participate in the benefits in accordance with such agreement. It would only be, in effect, requiring the grantee to pay to the grantor the consideration contracted to be paid for the reconveyance of the property described in the instrument thus executed. Clark v. Haney, 62 Tex. 511, 50 Am. Rep. 536; Loving v. Milliken, 59 Tex. 425; Gibbs v. Penny, 43 Tex. 561;

Alexander v. Rodriguez, 79 U. S. 323, 20 L. Ed. 406.

[4] Appellants' cause of action, growing out of and based upon said trust relationship and the repudiation thereof, is governed by the four-year statute of limitation, same being embraced within article 5690, V. S. T. C. S. 1914, which reads as follows:

"Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterward."

Appellants' cause of action is one for which no limitation is otherwise prescribed; therefore it comes within the provision of this article. C., T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, at page 225, 19 S. W. 472, 31 Am. St. Rep. 39; Cooper, Adm'r, v. Lee, 75 Tex. 114, at page 121, 12 S. W. 483; T. W. Shirley v. Waco Tap Ry. Co. et al., 78 Tex. 131, 10 S. W. 543.

From the briefs and oral arguments it is disclosed that the trial court instructed the jury to render verdict for appellees on the ground that if a trust relationship had ever existed same had been repudiated by appellee Jones under notice conveyed to appellants at such time as to bar their cause of action under the four-year statute of limitation. Again we must resort to the undisputed testimony of appellant J. H. Emmons to determine whether or not the court was warranted in thus precluding the jury from passing upon this feature of the case, viz.:

"In November, 1915, I was there when Mr. Jones came down with W. A. Freeman. I believe that Mr. Freeman, Mr. Jones, and I looked over the place. I had a conversation with Mr. Freeman, in which he told me that he was trading with Mr. Jones for the place, and afterwards he came back and told me he had traded for the place. I paid my rent to Mr. Freeman for 1916 and 1917. I do not know how many times Mr. Freeman came down to the place during each one of the years he owned it. I did not demand of Mr. Jones a commission for selling the place to Mr. Freeman; I demanded a settlement, my equity in the place. The night Mr. Jones made this deal with Mr. Freeman I demanded a settlement. I was at Mr. John Mathison's, and Mr. Jones was in Hubbard City. Mathison lived on an adjoining farm to me, and I went there and talked to Mr. Jones over the phone. I cannot give you what date that was I demanded my equity in the place. Mr. Jones did not tell me that I had no equity in the place; he told me that it was not a sale, that it was merely a matter of exchange, and that the only difference was I would pay my rent to Freeman instead of to himself. Mr. Jones said he would send me a check for $25, and I said 'Mr. Jones, that is no settlement.' And he said, 'That is all I will pay; this is not a sale, it is a matter of exchange, and all the difference is you pay your rent to Freeman instead of to me.' Mr. Jones did send me a check. He said 'I will send you a check for your services in helping sell the

place.' I didn't consider that a settlement. I got his check for $25. I guess I acknowledged receipt of it; didn't say anything about it not being in settlement in that receipt, only that I had received the $25. I recall when Mr. Jones got control of the place again from Mr. Freeman. I rode with him one day in his car, and he said, 'I am your landlord again.' I don't know that he told me he had bought the place back from Freeman; he told me that he had gotten it back. He did not tell me the terms upon which he had gotten it back. I believe he did tell me that he had traded Mr. Freeman a place at Hubbard City that he owned for the place down there, but he didn't go into full details and tell me the particulars of it during the time he had let Freeman have it and getting it back. I came up to Hubbard City, and went to see Mr. Jones, went to his office about an agreement for another year. I wanted to be agreeable, and wanted to know about planting my crop. Mr. Jones in that connection did not tell me that I was an unsatisfactory tenant. I had gone there to see him about agreeing with him to stay on the place for another year. That was after he had gotten it back from Mr. Freeman. I don't remember the exact date but it was in Nov. 1919, and he said, 'You have got all the settlement you will ever get.' And I said, 'Mr. Jones, you owe me my equity in that place and I ask you for a settlement,' and he said, 'Well, I have a warranty deed and it is on record for all this property,' and I said, 'I understand you have sold it,' and he said, 'Yes, I have sold it.' I said, 'I have got something coming,' and he said, 'You have all you will ever get. I have a warranty deed to that place and I will not pay you anything.' I said, 'Well, I will file suit and see what the courts say about it,' and he then said, 'What will satisfy you.' I believe I made him a proposition. Nevertheless, he would not accept it. He said, 'I would not mind to pay you a little something if you will move and give possession without any trouble, and I said, 'I wouldn't think of such a thing without a full settlement, and I want something in the neighborhood of what is coming to me; it is mine, and my family has worked hard for it.'"

[5] As bearing upon the question of the conveyance by Jones to Freeman being such as to justify appellee Jones to refuse to make settlement at the time he conveyed the property to Freeman, without such refusal necessarily amounting to a repudiation, we refer to the following agreement under which the conveyance by appellants to appellee Jones was executed, as established by the undisputed testimony of appellant J. H. Emmons: Appellants were to convey the tract of land to appellee Jones so as to place it under his control to be sold and to enable him to collect rents, to wit, one-fourth of the cotton and one-third of other crops; said rents to be applied as payment on the place until sold, and, when sold, Jones was to be paid the money then due him by appellants, and the remainder, if any, to be received by appellants. These facts the jury was certainly entitled to take into consideration in connec-

tion with the other evidence bearing upon this issue. The determination of this issue should have been left to the jury under appropriate instructions, as the testimony failed to establish, as a matter of law, that appellants' cause of action was barred, as limitation in reference to same could not commence to run except from the time when appellants discovered, or ought to have discovered by the exercise of proper diligence and inquiry under the circumstances, that appellee Jones did not intend to carry out the terms of the trust relationship created and existing under and by virtue of the agreement that he (Jones) would sell the property and out of the proceeds received first deduct the amount due him by appellants, and then deliver to appellants the residue of such consideration. This act of repudiation must not only be established as having in fact taken place, but knowledge of such repudiation must by the evidence be established to have been brought home to the parties to be precluded thereby so as to put into motion the statute of limitation. Railway Co. v. Titterington, supra; Stuart v. Meyer (Tex. Civ. App.) 196 S. W. 615; McBride v. Briggs (Tex. Civ. App.) 199 S. W. 341.

We do not think it necessary to discuss the other assignments complaining of the action of the trial court in refusing to give instructions requested by appellants, as such errors are not likely to occur on another trial of this cause.

By reason of the errors pointed out, the judgment of the court below is reversed, and the cause remanded as to all matters in issue between appellants and appellee Jones.

Reversed and remanded.