## GIBRALTAR SAVINGS & BLDG. ASS'N v. HARPER et ux.

### No. 7610.

Court of Civil Appeals of Texas. Austin.

June 17, 1931.

Motions for Rehearing Overruled July 15, 1931.

W. W. Caves, of Henderson, W. A. Keeling, of Austin, and Roberts, Monteith, Baring & Wilson, of Houston, for appellant.

T. W. Gregory and Selden Leavell, both of Houston, for appellees.

BAUGH, J.

Suit was by appellant upon a promissory note for $10,500, executed by appellees, dated July 23, 1926, and to foreclose a mortgage lien given by the Harpers on certain property situated in the city of Austin to secure its payment. Judgment was by default as to W. A. Harper. T. W. Gregory, appointed by the court as guardian ad litem for Perle Harper, who had become insane since the execution of said note and mortgage, interposed the defense that said property was at the time of the execution of said instruments the homestead of the Harpers; and that said mortgage, except as to the portion of said loan necessary to pay off outstanding purchase-money notes and taxes against said property, was void and unenforceable. Judgment was in accordance with said plea after a jury trial upon special issues, from which plaintiff below has appealed.

The property mortgaged will be referred to as the Twelfth street property. That designated by the Harpers in said mortgage as their homestead will be referred to as the Carolyn avenue property. The first contention of appellant is that the Harpers by their representations and conduct are estopped to assert any homestead rights in the Twelfth street property. The issues submitted to and found by the jury were:

1. That at the time of the execution of said note and mortgage the Twelfth street property was the homestead of the Harpers.

2. That at that time the Harpers intended to thereafter live in and occupy the Carolyn avenue property as their home.

3. That at that time and prior thereto they had represented to appellant that they owned and had moved into the Carolyn avenue property and were using same as their home.

4. That appellant's agents believed said representations, relied thereon, and would not have made said loan but for such representations.

5. That there was, at the time of the trial, no doubt or uncertainty but that the Twelfth street property was the homestead of the Harpers when said note and mortgage were executed.

6. That the presence of Dr. Harper at the Carolyn avenue property when visited by appellant's agents prior to making the loan, coupled with the representations of the Harpers, led appellant's agents to believe that the Harpers had abandoned the Twelfth street property as their home.

7. That appellant's agents, as prudent men, were justified in believing that the Harpers had abandoned the Twelfth street property as their home.

The fifth issue above obviously undertook to submit to the jury an essential element of the estoppel pleaded against the Harpers, that is, whether there was doubt or uncertainty as to which of said places was actually being used by the Harpers at the time as their homestead. We think appellant's contention that whether such doubt or uncertainty existed at the time of the execution of such instruments, not at the time of the trial, was the proper inquiry for the jury. Under the conclusion we have reached, however, the error was immaterial.

The uncontroverted evidence showed that the Twelfth street property had been the homestead of the Harpers continuously for more than 20 years; and appellant's agents knew it was their homestead when the loan was applied for. The Harpers were advised by appellant's agents and attorneys that they must abandon said property as a homestead before a loan in excess of the outstanding indebtedness against it could be made. Dr. Harper executed said note and mortgage at a downtown office, but instructed appellant's agent to go to the Twelfth street property to secure the signature and acknowledgment of his wife. Said agent did go there to secure her signature and found Dr. Harper and wife in actual, open, and exclusive possession and occupancy of said premises with their furniture remaining therein. Neither of the Harpers ever occupied the Carolyn avenue property, nor did they ever have any furniture therein. That property was occupied exclusively by H. C. Burt and family as their homestead. The only evidence relied upon, other than the misrepresentations of the Harpers to create an equitable estoppel against them, is the fact that before closing the loan on the Twelfth street property appellant's agents drove by the Carolyn avenue property and saw Dr. Harper there watering the grass on the lawn. They did not go upon the premises, nor make any inquiry of the

occupant, nor examine the deed records. Had they done so, such inquiry would have shown some one else in possession of that property; and that Dr. Harper had conveyed said property by deed duly recorded in March, 1926, to C. H. Wilson. The Harpers did not, at the time of the execution of said note and mortgage, have record title to said Carolyn avenue property; and one of the agents of appellant testified that Dr. Harper told him during their negotiations that he intended to use the additional money obtained from the loan on the Twelfth street property to pay part of the purchase price of the Carolyn avenue property—a matter which should have put appellant upon inquiry as to the ownership of the Carolyn avenue property.

■ From these facts it is obvious, we think, that said lien on the Twelfth street property, except as to the outstanding debts then against it, being on the homestead, under the Constitution, statutes, and decisions, was void.

■ We do not think the facts recited raised the issue of estoppel as against Mrs. Harper. There was never any abandonment of the Twelfth street property as a homestead. While the Harpers were found by the jury to have misrepresented the facts as to their occupancy of the Carolyn avenue property, the agents of appellant knew that the Twelfth street property had for many years been their homestead; and that same must be abandoned by them as such before a lien could be placed thereon. All negotiations preceding the loan were conducted with that knowledge. It is immaterial what their intentions were as to future occupancy of the Carolyn avenue property as their home, in the absence of some act accompanying that intention which attached to that property. While occupying a piece of property as his homestead, a man cannot, by intention to use it in future, establish a homestead right in another place." O'Brien v. Woeltz, 94 Tex. 154, 58 S. W. 943, 945, 59 S. W. 535, 86 Am. St. Rep. 829. See, also, Carstens v. Landrum (Tex. Com. App.) 17 S.W.(2d) 803.

The facts in this case are so nearly identical with those in Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12, 13, and the law so clearly and tersely stated by Chief Justice Stayton in that case, that we quote the language used by that eminent jurist as peculiarly applicable here.

"The fact of actual possession and use, as the home of the family, was one against which the lender could not shut its eyes; and this fact, coupled with the interest held by the borrower in the land, made the property homestead in fact and in law, on which the constitution declares no lien, such as claimed in this case, can exist.

"Every person dealing with land must take notice of an actual, open, and exclusive possession; and when this, concurring with interest in the possessor, makes it homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make. * * *

"The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife, made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution.

"If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law, and incumber homesteads with liens forbidden by the constitution. Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Pellat v. Decker, 72 Tex. 581, 10 S. W. 696; Kempner v. Comer, 73 Tex. 203, 11 S. W. 194."

We have read carefully the line of authorities cited and relied upon by appellant to sustain its contention. They fall into two classes: 1. Where the parties have simulated a sale of their homestead, taken purchase-money notes and sold same to innocent purchasers for the purpose of raising money on the homestead. Such cases present an entirely different situation from that here presented. 2. Cases where two different properties were used by the family, either alternately or both such properties used by parts of the family simultaneously in such manner as to render doubtful or uncertain which one actually constituted the homestead. In such case, a designation of the one would estop the parties to subsequently claim the other as against bona fide creditors who acted upon such designation. But our courts have not applied the equitable doctrine of estoppel against mortgagors asserting homestead rights even as against their own misconduct in designating other property as their homestead, unless the facts and circumstances were such as to render it ambiguous and uncertain which of said properties was actually being used and occupied by the mortgagor as his homestead at the time. Texas Land & Loan Co. v. Blalock, supra; Carstens v. Landrum, supra; Purdy v. Grove (Tex. Civ. App.) 35 S.W.(2d) 1078; Under the facts we think there was no ambiguity nor uncertainty as to which of said properties constituted in fact and in law the homestead of the Harpers at the time; and that this case is clearly concluded by the decision of the Supreme Court in the Blalock Case, supra. As stated in Speers Law of Marital Rights (3d Ed.) p. 343:

"The reason why parties cannot estop themselves to assert homestead rights in property upon which they actually reside, by their statement that it is not homestead, is that one cannot say he has been deceived by statements which he was bound to know were false."

■■ The other contention made by appellant relates to the interest rate fixed in the note sued upon. The loan made by the appellant was in part used to pay off outstanding indebtedness against the Twelfth street property, consisting of a purchase-money note and delinquent taxes thereon. The original purchase-money note bore interest at the rate of 8 per cent. The new note executed by the Harpers to cover these items and the additional money advanced to them bore 10 per cent. interest. As to the outstanding indebtedness against said property at the time the loan was made, the trial court awarded a foreclosure thereon, but limited the amount so foreclosed to the amount of the old note with 8 per cent. interest; and the amount of the taxes paid with 6 per cent. interest thereon, instead of the 10 per cent. provided in the note sued upon. Appellant contends that this was error, and that it was entitled to a foreclosure as to all of said indebtedness with the contracted interest rate of 10 per cent.

This presents a new question. No case in point has been cited to us, nor have we found any. The general rule of subrogation applies in such cases. That is, the new creditor who advances the money is entitled to all the security of the old creditor. In the instant case, the security of the note holder extended only to his principal debt and 8 per cent. interest; that of the tax collector to his debt with the legal rate of 6 per cent. interest thereon.

The increase in the rate of interest to the new creditor over that payable to the old creditors undoubtedly adds to the burden placed upon the homestead by the amount of such increase. In the Blalock Case, supra, it was held that, where the old note did not provide for attorney's fees and same were added in the new note, no lien existed to secure the added attorney's fees. In passing upon that question the Supreme Court used the following language:

"All appellant was entitled to recover, through enforcement of lien, was by reason of its right to subrogation, which could not extend to any sum the vendor of the land would not have been entitled to receive had he sued."

Applied literally, such holding would forbid any increase in the interest rate. But the question then before the court was that of attorney's fees, a distinct and separate burden from the interest charge, and in no way related to the compensation paid by the borrower to the lender for the use of the money. The essential and fundamental charge against the homestead is the indebtedness assumed or paid by the new creditor. The interest charge is but incidental thereto and subject to variation, within statutory limits, according to the exigencies of economic conditions. Had the Harpers in this instance been able to refinance their indebtedness at 6 per cent. interest, thus reducing the rate of the old note, and had defaulted, it is clear that, though the new creditor be subrogated to the security of the old, he could not recover the old rate of interest, but would be confined to the 6 per cent. contracted for. In that instance, the benefit would accrue to the borrower. On the other hand, if conditions be such that the homestead owner, whose debt on his property is due and about to be foreclosed, is not able to borrow money in the open market except at the increased rate of interest obtainable in the open market, to hold that he could not give his creditor security for the additional amount necessary to compensate his creditor at the current rate of interest would, in effect, deny him the opportunity to extend his debt and protect his homestead from forced sale. Such a narrow and restricted construction of the constitutional provisions, which would effectually defeat in many instances its spirit and purpose, cannot, we think, with reason, be applied. We hold, therefore, that appellant was entitled to a foreclosure on the homestead for the outstanding debts against it paid by appellant, and at the rate of interest provided in the note sued upon.

This sum is agreed upon by counsel. The trial court decreed a foreclosure of appellant's lien on said homestead to the extent same secured $6,172.66, with interest from date of said judgment on $3,917.19 of said amount at 8 per cent. per annum; and on $2,255.47 of said amount at 6 per cent. per annum. The judgment of the trial court is therefore reformed so as to adjudge a foreclosure of appellant's lien on said property to the extent of $6,887.53, with interest thereon from the date of the trial court's judgment at the rate of 8.4 per cent. per annum, the appellant having voluntarily reduced the 10 per cent. rate provided in the note to 8.4 per cent. In all other respects, the judgment of the trial court is affirmed.

Reformed and affirmed.