The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

## MARINICK et al. v. CONTINENTAL SOUTHLAND SAVINGS & LOAN ASS'N.

### No. 11993.

Court of Civil Appeals of Texas. Dallas.

Oct. 10, 1936.

Vern D. Adamson, of Dallas, for appellants.

Wm. H. Flippen and Dan P. Johnston, both of Dallas, for appellee.

BOND, Justice.

This suit was instituted by appellants in the nature of a trespass to try title, but finally resolved into a suit to cancel a mechanic's lien, deed of trust, and a trustee's deed on their homestead, and to recover a penalty on account of alleged payment of usurious interest upon a loan.

The property involved in the suit was purchased by Mrs. Marinick on September 24, 1921, and as a part of the purchase price she executed two vendor's lien notes in the total sum of $5,000; the first was in the sum of $2,750, payable to G. R. Jones and T. B. Blair, bearing interest at the rate of 8 per cent. per annum and secured by a deed of trust. Subsequently, this note and deed of trust were transferred to J. B. Adoue, Jr., and for the purpose of extending the vendor's lien note and to erect improvements on their homestead, Mrs. Marinick and her husband, A. O. Marinick, applied to appellee, then the Continental Savings & Loan Association, an organization formed under Revised Statute, title 24, art. 852 et seq., to procure a loan of $4,000.

Before the improvements were made, if, in fact, any were ever made, the property was inspected by a representative of the loan association, and the conclusion reached that the association would extend the loan for the purposes above indicated. Appellants thereafter, on March 11, 1926, executed and delivered a mechanic's lien contract to one Gus Sabanovich covering repairs and improvements to be made on the property specifically set up in the contract; also, at the same time, executed and delivered to Sabanovich a note in the sum of $1,250, due 30 days after date, to cover such repairs and improvements. The contract is reputed to have been acknowledged before Gus L. Berry, a notary public.

On March 15, 1926, appellants made a written application to appellee for membership, and subscribed for 60 shares "Class A" installment stock in the association, agreeing to accept the stock subject to its by-laws; also made formal application for the loan. The association extended the loan, paying to Adoue, the owner and holder of the vendor's lien note, the sum of $2,750, and to Sabanovich, the owner and holder of the mechanic's note and contract, the sum of $1,250; and, in return, Adoue and Sabanovich executed and delivered to appellee assignments of their respective liens and note, subrogating the company to all of their rights, liens, remedies, and equities, as the owners and holders of said liens and notes.

As security for the loan and the rights thus given under the assignments, appellants, on March 15, 1926, executed to appellee their certain note in the sum of $4,000, made payable when the 60 shares of stock shall reach a value equivalent to the face of the loan for which the note was given, bearing interest from date at the rate of 10 per cent. per annum payable in equal installments; and the note provides that, if default shall be made in the payment of any installment of interest, or of any dues or fines on the shares of stock when due, and any and all of such payments remain in default 4 months after due, at the option of the legal holder thereof, the full amount of the note then unpaid shall at once become due and payable. Contemporaneously with the execution of said note, appellants also executed a deed of trust to Ralph A. Beaton, trustee, on the property as se-

curity for said note, and the deed of trust had pretty much the same provision for acceleration as did the note.

Appellee then accepted appellants into membership of the association, issued to them the certificates of stock as a part of the loan transaction, and, for the purpose of further securing the payment of the loan, appellants pledged the shares of stock to the association.

In connection with the application, and before the association had advanced the $1,250 to Sabanovich, both Sabanovich and appellants filed with the association a joint affidavit of completion of the purported improvements on the property, reciting that the improvements under the mechanic's contract had been completed in accordance with the terms thereof; and "that the affiants, A. O. Marinick and wife, Amelia N. Marinick, have paid all sums due upon said mechanic's lien contract down to the sum of $1,250, as represented by the note mentioned in said mechanic's lien contract, which balance remains unpaid; that with this exception nothing remains due and unpaid for labor or material, performed or used in the construction of said improvements. The Continental Savings & Loan Association of Dallas, Texas, is contemplating the purchase of said $1,250 note and mechanic's lien securing the same, and this affidavit is made for the purpose of inducing said Association to act thereon in procuring said note and mechanic's lien contract."

Appellants made default in the payment of the installments of interest, failed to pay the dues on the stock certificates, and, in accordance with the acceleration provisions of the note and deed of trust, the balance remaining unpaid was by appellee declared due; and, under the power of sale of the deed of trust, the property was sold, appellee becoming the purchaser thereof. A trustee's deed was executed in accordance with the terms of the sale and deed of trust; under it, appellee claimed title to and possession of the property.

Appellee alleged, in defense of its title and possession of the property, a plea of not guilty and an affirmative plea in trespass to try title, alleging specifically the validity of the note, the mechanic's lien, deed of trust, the foreclosure proceedings, and deed; thus deraigning title to the property; and further alleged in the alternative that, if such proceedings were invalid, ap-

pellee, nevertheless, was entitled to judgment on its note and for foreclosure of its vendor's and mechanic's liens.

The cause was tried to a jury and, at the conclusion of the testimony, the court instructed a verdict in favor of appellee, accordingly rendered judgment against appellants and in favor of appellee for the title and possession of the property. It is from this judgment that this appeal is prosecuted.

Appellants contend that the court erred in instructing a verdict for defendant. They base the contention that the deed of trust executed and delivered to Ralph A. Beaton, trustee, to secure the note of $4,000, which, by the foreclosure proceedings appellee deraigned title to the property, was not acknowledged before the notary public, whose certificate is attached to the deed of trust.

 The trial having resulted in an instructed verdict in favor of appellee, it must be conceded that, if appellants were entitled to a jury finding upon any fact raised in the pleadings and evidence upon which the verdict was instructed and the judgment rendered, the action of the trial court was improper. In determining the issue, we must consider only the evidence favorable to appellants' contention, discarding all evidence to the contrary. If the evidence tends to show that appellants were not in the presence of the notary public whose certificate is attached, the court erred in instructing the verdict and rendering judgment in favor of appellee for the title and possession of the property sold under the deed of trust.

 On this contended issue, it might well be said that all deeds of conveyance, to be effective, must be acknowledged by the grantors to pass title to the property conveyed. Each of the appellants testified that they signed and acknowledged the mechanic's lien contract at the office of the company and before Gus L. Berry, a notary public, and signed the deed of trust and all other instruments in connection with the loan at their home; that neither of appellants appeared before the notary public to acknowledge the deed of trust under which the property was sold. Amelia N. Marinick testified that, on March 11, 1926, she went to the company's office and there appeared before Gus L. Berry, the notary public, and in the presence of her husband and Gus Sabanovich executed only one

instrument in favor of appellee; that she could not tell the kind and character of instrument she executed and was unable to say whether it was the deed of trust or the mechanic's lien contract. She further testified that, with the exception of the one instrument which she executed at the office, all other instruments in connection with the loan were signed by her at her home, and in the presence of only her husband and Gus Sabanovich; that she did not appear before any notary public and her acknowledgment taken, except at the company's office. A. O. Marinick testified that he and his wife, on March 11, 1926, executed a mechanic's lien contract at the loan company's office in the presence of each other, Gus Sabanovich, and Gus L. Berry; that the deed of trust and all other instruments in connection with the loan were signed at their home only in the presence of Sabanovich; that Mr. Berry, the notary public, whose certificate is attached to the deed of trust, was not present at that time and place to take their acknowledgments. There is no contention in appellee's testimony that any acknowledgment was ever taken by Mr. Berry at appellants' home to any instrument in connection with the transaction.

■ It is well settled that grantors in an instrument of conveyance are not bound by the recitals in the certificate of acknowledgment attached by a notary public, before whom the grantors never at any time appear, for the purpose of acknowledging such instruments. In Robertson v. Vernon, 3 S.W.(2d) 573, 575, the Waco Court of Civil Appeals, affirmed by the Supreme Court in 12 S.W.(2d) 991, said: "The weight of authority, however, seems to be that, where it is shown that the parties did not appear before a notary for the purpose of acknowledging the execution of the instrument, and no acknowledgment in fact was made, the notary's certificate to the instrument is not binding upon the grantors named therein, and their property rights cannot be destroyed or impaired by said certificate of acknowledgment. [Citing authorities.]"

■ So, we think, the effect of appellants' evidence meets the test prescribed, raising a question of fact for the determination of a jury and sufficient to support a jury's findings in their favor; thus considered, the action of the court, in peremptorily instructing the jury against appellants and rendering judgment in favor of appellee

for the title and possession of the property, was error. Had the judgment of the court been rendered for the amount due on the $4,000 note, as an extension and renewal of the vendor's lien note and the mechanic's lien note, and for a judicial foreclosure of such liens, this appeal would have presented a different situation; but, as the judgment decreed the title to the property, based on the deed of trust foreclosure proceedings, for the reason stated, the cause must be reversed.

Appellants further contend that the mechanic's lien note and contract are invalid as to create an enforceable lien on their homestead; the proposition is grounded on the fact that the purported contract between them and Gus Sabanovich was a simulated transaction; no improvements were ever made on the homestead and none were ever contemplated by the parties. This contention only becomes material in the event the jury, on another trial, should determine that the deed of trust under which the property was sold to appellee was invalid, the grantors not appearing before the notary public for the purpose of acknowledging the instrument.

The testimony of each of the appellants is, to the effect, that they were in need of money to pay an outstanding indebtedness, and, in conversation with Sabanovich, a plan and scheme was devised to create a simulated mechanic's lien on their property; and, in turn, transfer the lien to appellee for an extended loan. They conceived the idea to have a representative to inspect the property before the loan was extended, and, in order to make the purported improvements seem realistic, A. O. Marinick began some kind of improvements about the property for the purpose of deceiving such representative. Each of the appellants admit they signed a fraudulent affidavit of completion of the improvements, to further their scheme and induce the appellee to extend to them the loan. The effect of their testimony is that they premeditatedly planned to defraud appellee in the transaction and did do so.

■ Under these conditions, we think appellants are estopped to assert the invalidity of the simulated mechanic's lien unless it be determined by the jury that the appellee had knowledge thereof. A simulated lien contract is invalid as a lien against a homestead, and there can be no estoppel where the truth is known to all parties. However, as we view this record, there is not suffi-

cient evidence in our opinion to bring knowledge to appellee of the transaction as to avoid the imputation of estoppel.

Appellants further challenged the validity of the mechanic's contract as not having been acknowledged by the wife privily and apart from her husband, in the manner required by statute (Vernon's Ann.Civ.St. art. 1299). The testimony of each of the appellants is to the effect that they signed the contract and acknowledged it before the notary public whose certificate is attached thereto, in the presence and hearing of each other. There is no other testimony corroborating that of the appellants. Ordinarily, we think, such testimony would be insufficient to impeach the notary's certificate. It is a rule of evidence in this state that the uncorroborated testimony of grantors in a conveyance of real estate will not overcome the recitation of the notary public. Stewart v. Miller (Tex. Civ.App.) 271 S.W. 311; Cockerell v. Griffith (Tex.Civ.App.) 255 S.W. 490; Emmons v. Jones (Tex.Civ.App.) 246 S.W. 1052; Texas Company v. Keeter (Tex.Civ. App.) 219 S.W. 521. This is a just rule in weighing evidence. The certificate of a disinterested officer is more to be relied upon than the uncorroborated evidence of interested grantors. However, in this case, Gus L. Berry, whose notary certificate is attacked by the testimony of each of the appellants, cannot be said to be wholly a disinterested officer. The evidence shows that he was at the time of the acknowledgment an employee of appellee and a holder and owner of shares of stock in the association. Thus presented, we are of the opinion that the controverting testimony raises a fact issue of whether or not the wife's acknowledgment was taken privily and apart from her husband. Any fact issue necessarily includes a right and the duty of a jury or court having jurisdiction to consider the relative trustworthiness of the notary's certificate and the impeaching evidence of the complaining grantor, where the official and the grantor are interested parties. Like every other fact issue, in a civil case, it is to be determined by a preponderance of all the evidence. So, we think, on another trial of this cause, this issue should be submitted to a jury for their determination.

Appellants further contend that the note declared upon in appellee's alternative plea is barred by the four-year statute of limitation (Vernon's Ann.Civ.St. art. 5527), and the loan transaction evidences an intention to collect usurious interest. A similar transaction to the one here involved was before the Eastland Court of Civil Appeals, in Continental Savings & Building Ass'n v. Wood et al., 33 S.W.(2d) 770, 772, in which that court said: "As noted, the appellee subscribed for 90 shares of the capital stock of the appellant association, thus becoming a member thereof and subject to its constitution and by-laws. A membership fee of $1.50 per share was the fixed charge on all stock sales. By their contract appellees agreed to pay this sum. This amount was not paid as interest at all, but was paid by virtue of a contract to purchase stock. The payment of such amount could not be regarded as a payment of interest, unless, as found by the trial court, same was done as a device to conceal the taint of usury. It is conceded that our statutes relating to building and loan associations above cited authorize this device, and it is not contended that appellant exacted any charge not authorized by such statutes. The question therefore becomes one of the constitutionality of these statutes. Manifestly, appellant could not be adjudged to have devised a scheme to conceal usury if all its actions were authorized by a valid statute. Prior to the enactment of these statutes, it had become the settled law in this state that payments made by virtue of a contract to purchase stock are not made for the use of borrowed money, but are the means by which a shareholder acquires an interest in the property of the association, and that there is no inconsistency between the relationship of borrower and stockholder. The contracts to borrow money and to subscribe for stock are separate and distinct. [Citing authorities.]"

See, also, Hatcher et ux. v. Continental Southland Savings & Loan Ass'n, 124 Tex. 601, 80 S.W.(2d) 299; Wood et al. v. Continental Savings & Building Ass'n (Tex. Com.App.) 56 S.W.(2d) 641.

So, a consideration of the Texas statute and authorities leads us to the conclusion that the loan transaction in the case at bar, made under the terms of the statute, and the due date of the note made in conformity therewith, neither presents a question of usury nor limitation. There is no merit in appellants' contention.

There are many other assignments of error, which we deem not necessary to

discuss, but which we have carefully considered; they are overruled, and, for the reason stated, the judgment is reversed, and cause remanded to the trial court for another trial.